## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| IN RE: TAASERA LICENSING LLC, PATENT LITIGATION | § § § | |
| | § | CIVIL ACTION NO.  2:22-MD-03042-JRG |
| THIS DOCUMENT RELATES TO CIVIL ACTION NO. 2:22-CV-00314-JRG | § § § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Defendant Taasera Licensing LLC's ("Taasera") Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative, to Dismiss for Failure to State a Claim (the "Motion to Dismiss for Lack of Personal Jurisdiction") (Case No. 2:22-md-3042, Dkt. No. 11; Case No. 2:22-cv-314, Dkt. No. 87) and Quest Patent Research Corporation's ("Quest") Motion to Dismiss for Lack of Subject Matter Jurisdiction, or in the Alternative, to Dismiss for Failure to State a Claim (the "Motion to Dismiss for Lack of Subject Matter Jurisdiction") (Case No. 2:22-md-3042, Dkt. No. 14; Case No. 2:22-cv-314, Dkt. No. 89) (collectively, the "Motions to Dismiss").  On February 21, 2023, the Court held a hearing in the above-captioned case regarding the Motions to Dismiss, along with several other consolidated cases and related motions.  (Case No. 2:22-cv-314, Dkt. No. 145).  Having considered the Motions to Dismiss, the subsequent briefing, the oral arguments, and for the reasons set forth herein, the Court finds that the Motions to Dismiss should be **GRANTED**.

## I. BACKGROUND

On February 25, 2022, Taasera filed suit against Palo Alto Networks, Inc. ("Palo Alto") in the Eastern District of Texas (the "EDTX Action"), asserting infringement of U.S. Patent Nos. 6,842,796, 7,673,137, 8,127,356, 8,327,441, 8,850,517, 8,955,038, 8,990,948, 9,092,616, and

9,923,918 (collectively, the "Asserted Patents").  (Case No. 2:22-cv-62, Dkt. No. 1).  On March

22, 2022, the Court dismissed Taasera's Complaint without prejudice.  (Case No. 2:22-cv-62, Dkt.

No. 12).  That same day, Palo Alto Networks, Inc. ("Palo Alto") filed suit against Taasera and

Quest for declaratory judgment of non-infringement as to the Asserted Patents in the Southern

District of New York.  (Case No. 2:22-cv 314, Dkt. No. 1 at 1–2).  Beginning on August 3, 2022,

and for tag-along cases filed thereafter, the United States Judicial Panel on Multidistrict Litigation

(the "Panel") centralized the above-captioned litigation in the EDTX and transferred the following

cases to the same (categorized by their original jurisdictions) for consolidated pretrial proceedings:

- Eastern District of Texas:

    - *Taasera Licensing LLC v. Trend Micro Incorporated*, Case No. 2:22-cv-00441

    - *Taasera Licensing LLC v. Check Point Software Technologies Ltd.*, Case No. 2:22-cv-00063

    - *Taasera Licensing LLC v. Fortinet Inc.*, Case No. 2:22-cv-00468

    - *Taasera Licensing LLC v. Musrubra US LLC d/b/a Trellix*, Case No. 2:22-cv-00427

- Northern District of Texas:

    - *Trend Micro, Inc. v. Taasera Licensing LLC*, Case No. 2:22-cv-00303

- Southern District of New York:

    - *Palo Alto Networks, Inc. v. Taasera Licensing LLC*, *Quest Patent Research Corporation*, Case No. 2:22-cv-00415

- Western District of Texas:

    - *Taasera Licensing LLC v. CrowdStrike, Inc.*, *CrowdStrike Holdings, Inc.*, Case No. 2:22-cv-00468

(Dkt. No. 81 at 1, 3).  On October 20, 2022, Taasera filed the Motion to Dismiss for Lack of

Personal Jurisdiction and argues that the declaratory judgment action should be dismissed (1)

under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction because Taasera

"has no ties to, or presence in [the Southern District of New York]" and (2) under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (Dkt. No. 87 at 7).  Quest concurrently filed its Motion to Dismiss for Lack of Subject Matter Jurisdiction and similarly contends that the declaratory judgment action should be dismissed (1) for lack of subject matter jurisdiction because there is no case or controversy between Quest and Palo Alto and (2) under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (Dkt. No. 89 at 6).

## II.  LEGAL STANDARD

### A.  Personal Jurisdiction

Federal Circuit law applies to determinations of personal jurisdiction "when a patent question exists."  *Celgard, LLC v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015).  For purposes of personal jurisdiction, courts may exercise general or specific jurisdiction.  *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021).  A federal district court has personal jurisdiction over a party if that party would be subject to personal jurisdiction in a court of general jurisdiction in the forum state.  *See* FED. R. CIV. P. 4(k)(1)(A).  When a party is not a resident of that state, the exercise of personal jurisdiction must comport with both the state's "long-arm statute" and constitutional principles of due process. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).

"Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether the forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process." *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001).  For the first prong of the personal jurisdiction analysis, the Federal Circuit "defer[s] to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of

federal due process." *Graphic Controls Corp. v. Utah Med. Prod., Inc.*, 149 F.3d 1382, 1386 (Fed. Cir. 1998) (citations omitted).  When cases are transferred by the Panel pursuant to 28 U.S.C. § 1407, this Court "is obligated to apply the substantive law of the transferor court and must treat each case as if it were pending in the district from which it was transferred."[1]  *In re Norplant Contraceptive Products Liab. Lit.*, 215 F. Supp. 2d 795, 804 (E.D. Tex. 2002).  For the second prong, Federal Circuit law governs whether the assertion of personal jurisdiction comports with due process.  *Graphic Controls*, 149 F.3d at 1385–86.  The Second Circuit has concluded that New York's long-arm statute "does not coincide with the limits of the Due Process Clause," which requires this Court to consider both the statutory and constitutional prongs of the personal-jurisdiction analysis.  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 244 (2d Cir. 2007); *but cf. Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) ("Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis.").

### B.  Subject Matter Jurisdiction

"The party asserting jurisdiction bears the burden of proof on a 12(b)(1) motion to dismiss." *Life Partners Inc. v. United States*, 650 F.3d 1026, 1029 (5th Cir. 2011). "In assessing jurisdiction, the district court is to accept as true the allegations and facts set forth in the complaint." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012).  A 12(b)(1) motion will not be granted "unless it appears certain that the plaintiffs cannot prove any set of facts in support of their claim which would entitle them to relief." *Life Partners*, 650 F.3d at 1029.

---

[1] Given that this case was originally filed in the Southern District of New York, the Court applies New York substantive law.

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting 28 U.S.C. § 2201(a)). "When considering a declaratory judgment action, a district court must engage in a three-step inquiry." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). The court must ask (1) "whether an 'actual controversy' exists between the parties" in the case; (2) "whether it has the 'authority' to grant declaratory relief"; and (3) whether "to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Id.*  "In the context of conduct prior to the existence of a license, declaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee."  *SanDisk Corp. v. STMicroelectronics, Inc*., 480 F.3d 1372, 1380–81 (Fed. Cir. 2007) (emphasis added). The case or controversy requirement can be satisfied by "conduct that can be reasonably inferred as demonstrating intent to enforce a patent . . . ." *Hewlett Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1363 (Fed. Cir. 2009).

"A declaratory judgment plaintiff must plead facts sufficient to establish jurisdiction at the time of the complaint, and post-complaint facts cannot create jurisdiction where none existed at the time of filing." *Microsoft Corp. v. DataTern*, *Inc*., 755 F.3d 899, 906 (Fed. Cir. 2014). A case or controversy must also remain present throughout the course of the suit. *See Preiser v. Newkirk*, 422 U.S. 395, 401–02 (1975). In making this determination, the court may rely on pleaded and undisputed facts or on findings that resolve factual disputes. Pursuant to Fifth Circuit precedent:

> [T]he district court is to accept as true the allegations and facts set forth in the complaint. Additionally, the district court is empowered to consider matters of fact

which may be in dispute. The district court consequently has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*Greenstein*, 691 F.3d at 714 (citations and quotations omitted). The Fifth Circuit has said that a challenge is "factual" rather than "facial" "if the defendant 'submits affidavits, testimony, or other evidentiary materials.'" *Superior MRI Services, Inc. v. Alliance Healthcare Services, Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (citations omitted). "To defeat a factual attack, a plaintiff 'must prove the existence of subject-matter jurisdiction by a preponderance of the evidence' and is 'obliged to submit facts through some evidentiary method to sustain his burden of proof.'" *Id.* (citations omitted).

### C.  Failure to State a Claim

Under the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  A Court can dismiss a complaint that fails to meet this standard. FED. R. CIV. P. 12(b)(6).  "To survive dismissal at the pleading stage, a complaint must state 'enough facts such that the claim to relief is plausible on its face.'" *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads enough facts to allow the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court accepts well-pleaded facts as true and views all facts in the light most favorable to the plaintiff, but the Court is not required to accept the plaintiff's legal conclusions as true. *Id.*

In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).  In determining a motion to dismiss,

"[t]he court may consider 'the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.'"  *Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 935 (E.D. Tex. 2016) (quoting *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

In the context of patent infringement, a complaint must place the alleged infringer on notice of what activity is being accused of infringement.  *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017).  However, the plaintiff is not required to prove its case at the pleading stage.  *Id.*  Assessing the sufficiency of pleadings is a context specific task; simpler technologies may require less detailed pleadings whereas more complex technologies may demand more.  *Disk Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018).

### III. DISCUSSION

The Court first addresses Taasera's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. No. 87).  The Court then considers Quest's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. No. 89).

#### A.  The Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. No. 87)

##### i.  General Jurisdiction

Under New York's general jurisdiction statute, a New York court may exercise general jurisdiction over companies doing permanent and continuous business in New York. N.Y. C.P.L.R, § 301.  "General jurisdiction . . . permits a court to adjudicate any cause of action against [a] corporate defendant, wherever arising, and whoever the plaintiff."  *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016).  General jurisdiction only extends to a forum beyond a corporation's state of incorporation or principal place of business in the "exceptional case." *In re*

*Roman Cath. Diocese of Albany, New York, Inc.*, 745 F.3d 30, 39 (2d Cir. 2014) (quoting *Daimler*, 571 U.S. at 139 n.19). The "exceptional case" is one in which a corporation's contacts are "so substantial and of such a nature as to render the corporation at home in that state." *Daimler*, 571 U.S. at 139 n.19 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447 (1952)).

Taasera initially moves to dismiss Palo Alto's declaratory judgment action, arguing that it is not "at home" in New York for purposes of general jurisdiction.  (Dkt. No. 87 at 11).  Taasera sets forth various bases by which it contends to have no connection to New York, including (1) that it is managed by Tim Scahill, who lives in and works remotely from Germany; (2) Tim Scahill has never worked in New York; (3) Taasera purchased the Asserted Patents from two Delaware companies; (4) it has never done business in New York; (5) it has no property in New York; (6) it does not maintain any offices in New York; (6) it does not have a registered agent in New York; and Taasera does not have bank accounts, post office boxes, telephone lines, or mailing addresses within New York.  (*Id.*).

Palo Alto disputes Taasera's management and contends that Taasera is a manager-managed, limited liability company and its sole manager is Quest, which is based in New York. (Dkt. No. 90 at 23).  Palo Alto argues that Quest's chief executive officer (CEO) is Jon Scahill who is a New York attorney and Taasera concedes that he manages Taasera from New York.  (*Id.*). Palo Alto contends that Taasera's contacts with Texas exist only on paper and it cannot act without direction or authorization from New York entities and individuals.  (*Id.*).

Taasera replies that this is not a "truly exceptional case" and it can be treated as "essentially at home" where it is incorporated or maintains its principle place of business:  Texas.  (Dkt. No. 98 at 5).  Although Quest is listed as Taasera's manager on Taasera's Texas Certificate of Formation, Taasera argues that the parent company, as opposed to an individual, is routinely listed

as the 'manager' of its subsidiaries on formation papers, which alone fails to show that Taasera conducts any business in New York.  (*Id.* at 6).

The Court concludes that Palo Alto fails to carry its burden to confer general jurisdiction over Taasera under New York's general jurisdiction statute.  General jurisdiction requires that a "corporation's affiliations with [a] [s]tate are so continuous and systematic as to render it essentially at home in the forum [s]tate."  *Daimler*, 571 U.S. at 139 (citation and internal quotation marks omitted).  *International Shoe Co. v. Washington* instructs that jurisdiction will exist on a claim "arising from dealings entirely distinct from those activities" when a corporation's operations "within a state are so substantial and of such a nature as to justify suit."  326 U.S. 310, 318 (1945).  Although Quest is Taasera's parent corporation, and Jon Scahill's management between Quest and Taasera overlaps, these facts without more do not establish general jurisdiction over Taasera in New York.  (Dkt. No. 87-1 ¶ 3).  Palo Alto's scenario would establish personal jurisdiction over any company with a related corporate entity in another state with common management.  Such would largely eviscerate general jurisdiction and undermine the paradigm forums in which general jurisdiction exists over a company as to all causes of actions: the place of incorporation and principal place of business.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

### ii.  Specific Jurisdiction

#### 1.  *Statutory Prong*

Under the statutory prong of the personal jurisdiction analysis, New York law requires that courts exercise specific jurisdiction in accordance with N.Y. C.P.L.R. § 302(a). "To determine whether there is a basis for personal jurisdiction under § 302(a)(1), courts evaluate 'the totality of the defendant's activity within the forum' and whether 'there is an articulable nexus, or a

substantial relationship, between the claim asserted and the actions that occurred in New York.'"

*Poof-Slinky, LLC v. A.S. Plastic Toys Co*., No. 19 Civ. 9399 (ER), 2020 WL 5350537, at *3 (S.D.N.Y. Sept. 4, 2020) (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)). Section 302(a)(1) sets forth a two-part test: "(1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL (Licci IV)*, 732 F.3d 161, 168 (2d Cir. 2013) (citations omitted).

Taasera claims that New York lacks specific jurisdiction over it, arguing that Taasera is a Texas company that purchased the Asserted Patents from two Delaware companies; all of its legal activities take place in Texas; and Quest has no agreements with Taasera concerning the enforcement of the Asserted Patents. (Dkt. No. 87 at 14). It contends that the purported agreements between Quest and Taasera are irrelevant to this case, which Palo Alto concedes arise from Taasera's efforts to enforce the Asserted Patents against Palo Alto. (*Id.*). Enforcement of the Asserted Patents, Taasera argues, took place in Texas where it initially filed suit for patent infringement against Palo Alto. (*Id.*). Taasera claims that it has neither filed nor threatened to file suit in New York, and it served the EDTX complaint and summons on Palo Alto's registered agent who is located in Austin, Texas. (*Id.* at 15).

Palo Alto provides a list of Taasera's contacts with New York:

(1) Taasera's Texas Certificate of Formation states that Taasera is a manager-managed, limited liability company, and identifies a single manager, Quest, which is located at 411 Theodore Fremd Avenue, Rye, New York;

(2) Taasera admits that Jon Scahill manages Taasera from Rye, New York;

(3) Jon Scahill is Quest's CEO;

(4) Jon Scahill is an attorney registered with the New York bar and lists his address as 411 Theodore Fremd Avenue, Rye, New York;

(5) the patent-assignment documents on file with the United States Patent Office for five of the Asserted Patents list Quest and Jon Scahill as contacts for correspondence related to those patents, and list Quest and Jon Scahill's address as 411 Theodore Fremd Avenue, Rye, New York;

(6) Quest promotes Taasera's patent portfolio and patent enforcement activities, including its enforcement action against Palo Alto, on its New York-based website, prominently featuring its presence New York and listing its Rye, New York address; and

(7) an individual in New York registered Taasera's website.

(Dkt. No. 90 at 15–16). Palo Alto also contends that Taasera transacts business in New York via contracts with New York entities and asserts that, for example, (1) Taasera purchased five of the Asserted Patents from Daedalus Blue, whose headquarters is in Bronxville, New York; (2) Quest provided Taasera with $250,000, to purchase four other Asserted Patents; and (3) Taasera is located in New York by way of Quest and Jon Scahill. (*Id.* at 17–18). Therefore, Palo Alto argues that Taasera's New York contacts satisfy the long-arm statute. (*Id.*).

According to Palo Alto, Taasera can enforce the Asserted Patents with approval only from Taasera's sole manager, New York-based Quest. (*Id.*). Palo Alto disputes that this case arises only out of the EDTX Action, arguing that New York precedent requires that a "[p]laintiff's claims need only be in some way arguably connected to Defendant's business transactions in New York to satisfy the arises from requirement." (*Id.* at 17 (quoting *Blockchange Ventures 1 GP, LLC v. Blockchange, Inc.*, No. 21 Civ. 891, 2021 WL 3115457, at *5 (S.D.N.Y. July 22, 2021)). It contends that, Palo Alto's declaratory judgment claim is connected to Taasera's New York contacts "because those contacts form part of the patent-enforcement company [Palo Alto] is fighting . . . and relate directly to the [Asserted Patents]." (*Id.*).

Taasera replies that its formation and corporate structure do not relate to patent enforcement efforts and do not show that it conducts business in New York. (Dkt. No. 98 at 6).

Taasera contends that Quest displays its subsidiaries' operations on its website but simply reporting on those activities does not confer those contacts to Quest.  (*Id.* at 7).

Under the statutory prong, Palo Alto has shown that Taasera has transacted business in New York but has failed to show that its declaratory judgment claim arises from that business activity.  Taasera's business contacts are related to purchasing the Asserted Patents.  Taasera contends that it purchased the Asserted Patents from two Delaware companies, Daedalus Blue LLC ("Daedalus Blue") and Taasera, Inc.[2]  (Dkt. No. 87 at 8).  However, Taasera fails to address or dispute that Daedalus Blue's headquarters is located in Bronxville, New York, and its acquisition agreement with Daedalus Blue entitles Daedalus Blue to a share of net proceeds from monetizing Taasera's portfolio.  (Dkt. No. 21-12 at 9).  Further, while Taasera, Inc. is a Delaware company, Taasera purchased the Taasera Portfolio with a $250,000 capital advance from Quest, its New York parent company.  (*Id.* at 19).  Also, Quest and Taasera share management given that Jon Scahill manages Taasera from New York; Jon Scahill is also the CEO of Quest; and Quest is the sole manager of Taasera.  (Dkt. No. 87-1 ¶¶ 3, 4; Dkt. No. 21-11 at 2, 3).

Palo Alto argues that Taasera's New York contacts "form part of the patent-enforcement campaign [that] [Palo Alto] is fighting in this lawsuit and relate directly to the 'Asserted Patents.'" (Dkt. No. 90 at 17).  In other words, Palo Alto alleges that its claim arises out of Taasera's agreements to purchase the Asserted Patents; however, Palo Alto seems to misunderstand the

---

[2] Taasera purchased five of the Asserted Patents from Daedalus Blue as part of a portfolio of network security patents, consisting of 22 United States patents and two foreign patents.  (Dkt. No. 21-12 at 9).  Pursuant to the Taasera-Daedalus Blue acquisition agreement, Daedalus Blue "is entitled to a portion of the net proceeds from monetization of the [Taasera] portfolio."  (*Id.*).  In a separate transaction, Taasera purchased four of the Asserted Patents as part of an acquisition of seven patents (the "Taasera Portfolio") via assignment from Taasera, Inc. for $250,000.  (*Id.* at 9, 19).  To purchase the Taasera Portfolio, Taasera received a capital advance of $250,000, from Quest.  (*Id.* at 19).

inquiry.  Instead, Palo Alto's declaratory judgment action arises out of Taasera's EDTX Action against Palo Alto.  (*See* Dkt. No. 21 ¶¶ 20–21 ("Accordingly, an actual and justiciable controversy exists between Palo Alto Networks and Defendants concerning whether Palo Alto Networks infringes one or more claims of any of the [Asserted Patents]."); *see also Shenzhen OKT Lighting Co., Ltd. v. JLC-Tech LLC*, No. 20 Civ. 5062 (ER), 2021 WL 4443637, at *7 (S.D.N.Y. Sept. 28, 2021) (concluding that the plaintiff's declaratory judgment claim for non-infringement arises out of the patentee's threat of patent enforcement against plaintiff's customers and not plaintiff's unrelated business transactions in New York such as the patentee's "relationships with distributors in New York, specified sales or commercial success in New York, or participation at trade shows in New York, without more").  Taasera's efforts to enforce the Asserted Patents against Palo Alto in the EDTX are unrelated to any of Taasera's New York contacts.

### 2. *Constitutional Prong*

Even if the Court were to assume that Taasera's New York contacts satisfied the statutory prong of the personal jurisdiction analysis pursuant to C.P.L.R. § 302(a), Palo Alto fails to show that Taasera's connections satisfy the constitutional prong of the personal jurisdiction analysis.

In accordance with the constitutional prong, and in light of the Supreme Court's due process jurisprudence, the Federal Circuit directs that three factors be considered: "(1) whether the defendant purposefully directed its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is reasonable and fair."  *Xilinx, Inc v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1353 (Fed. Cir. 2017) (citation and internal quotation marks omitted) (noting that the first two factors correspond with the "minimum contacts" prong of *Int'l Shoe*, 326 U.S. at 316, and the third factor corresponds with the "fair play and substantial justice" prong of the analysis).  Claims

13

for declaratory judgment arise out of "the activities of the defendant patentee in enforcing the patent or patents in suit." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008).  Therefore, "[t]he relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant patentee 'purposefully directed [such enforcement activities] at residents of the forum,' and the extent to which the declaratory judgment claim 'arises out of or relates to those activities.'" *Id.* (quoting *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006)).

Here, the present declaratory judgment action arises from the EDTX Action filed by Taasera, which was subsequently dismissed without prejudice.  (Case No. 2:22-cv-62, Dkt. No. 1; Dkt. No. 12).  The Federal Circuit requires that the relevant inquiry be based on Taasera's enforcement activities directed at New York residents.  *Avocent*, 552 F.3d at 1334.  As an initial matter, Palo Alto is not a New York resident.[3]  In fact, Palo Alto does not even plead that Taasera has directed enforcement of the Asserted Patents toward any New York resident.  While the Court recognizes that Taasera dismissed the EDTX Action without prejudice and an ascertainable threat of patent enforcement by Taasera remains, Palo Alto has not shown that New York is the forum in which Taasera has directed any such enforcement activities.  Given that Taasera lacks sufficient minimum contacts with New York, this Court has no basis to consider whether personal jurisdiction comports with traditional notions of fair play and substantial justice.

### iii.   Alter Ego Theory

In its Complaint, Palo Alto alleges that Taasera and Quest are alter egos and that Quest's New York contacts should be imputed to Taasera.  (Dkt. No. 21 ¶¶ 4, 9).  The parties present

---

[3] Palo Alto is a Delaware corporation, and its principal place of business is located in Santa Clara, California.  (Case No. 2:22-cv-314, Dkt. No. 21 ¶ 2).

competing versions of the alter ego standard that each contends should govern the personal-jurisdiction dispute.  Taasera contends that to establish that two corporate entities are alter egos, a party must show (1) "that the owner exercised complete domination over the corporation with respect to the transaction at issue" and (2) "that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil."  (Dkt. No. 87 at 17 (quoting *Thrift Drug, Inc. v. Universal Prescription Adm'rs*, 131 F.3d 95, 97 (2d Cir. 1997) (citation and internal quotation marks omitted)).  Palo Alto asserts that alter ego theory does not require a showing of both prongs for jurisdictional purposes because the standard is less onerous than it is in the liability context.  (Dkt. No. 90 at 23).  Rather, Palo Alto argues that, under New York law, alter ego theory requires only the first prong and the critical question is whether a corporate entity "is being used by the dominating entity to advance its own personal interests as oppose[d] to furthering the corporate ends."  (*Id.* (quoting *Miramax Film Corp. v. Abraham*, No. 01-CV-5202 (GBD), 2003 WL 22832384, at *7–8 (S.D.N.Y. Nov. 25, 2003) (citations omitted)).  The Court need not wade through New York caselaw and resolve the dispute among New York courts to discern the applicable alter ego standard.  Indeed, it finds that Taasera and Quest are not alter egos under either standard as further discussed below.  *See, e.g.*, *In re Platinum and Palladium Antitrust Litig.*, 1:14-cv-9391-GHW, 2017 WL 1169626, at *47 n.21 (S.D.N.Y. Mar. 28, 2017) ("At least two courts in this district observed that the question whether the same standard that governs the alter ego analysis for liability purposes controls for jurisdictional purpose[s] has not yet been addressed by the Second Circuit and that courts have taken a variety of approaches when confronted with this question.").

Under alter ego theory, within either a jurisdiction or liability context, a party must show (1) "that the owner exercised complete domination over the corporation with respect to the

transaction at issue" and (2) "that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Thrift Drug*, 131 F.3d at 97.  Courts have considered a list of ten non-exhaustive factors in determining whether a corporate entity completely dominates another:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address[,] and telephone numbers of corporate entities; (6) the degree of business discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arm['] s length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities

(collectively, the "*Platina Bulk* Factors").  *Platina Bulk Carriers Pte Ltd. v. Praxis Energy Agents DMCC*, No. 20 Civ. 4892 (NRB), 2021 WL 4137528, at *4 (S.D.N.Y. Sept. 10, 2021) (quoting *Clipper Wonsild Tankers Holding A/S v. Biodiesel Ventures, LLC*, 851 F. Supp. 2d 504, 509–10 (S.D.N.Y. 2012)).

### 1.   *Complete Domination*

Taasera reraises many of its prior contentions as to general and specific jurisdiction in disputing alter ego, arguing that Taasera is a distinct entity from Quest: (1) Taasera is organized in Texas, and its principal place of business is located in Plano, Texas, whereas Quest is incorporated in Delaware and its principal place of business is located in New York; (2) Taasera independently develops software from Quest, and Quest has no control over Taasera's day-to-day operations; (3) Taasera is managed by Tim Scahill, who works remotely from Germany; and Taasera and Quest do not share office space, document management systems, or bank accounts. (Dkt. No. 87 at 19).  Taasera contends that Palo Alto addresses only the "inadequate capitalization" factor of the *Platina Bulk* factors in its Amended Complaint.  (*Id.*).  According to Taasera, Palo

Alto contends that Taasera is purposefully undercapitalized and relies on an excerpt from Quest's SEC filing, which allegedly states:

> Since the operating subsidiaries do not have any assets other than the patents, and the Company does not have any available financial resources to pay any judgment which a defendant may obtain against a subsidiary, such a judgment may result in the bankruptcy of the subsidiary and/or the loss of the patents, which are the subsidiaries' only assets.

(*Id.* (quoting Dkt. No. 21-12 at 20)).  Taasera argues that that the aforementioned statement does not show that Taasera is undercapitalized.  (Dkt. No. 87 at 20 (citing *Cohen v. Schroeder*, 724 F. App'x 45, 49 (2d Cir. 2018)).  It also contends that while Quest received a capital advance of $250,000, to acquire several Asserted Patents for Taasera, such does not indicate complete domination by Quest over Taasera.  (*Id.* at 21).  In fact, Taasera contends that "[t]his fact is irrelevant to the alter ego analysis, as it only shows that a parent corporation is working to establish its subsidiary . . . ."  (*Id.*).

Palo Alto responds that the *Platina Bulk* Factors show that Quest completely dominates Taasera:

(1) Taasera and Quest are undercapitalized according to Quest's 10-K, which provides that Taasera's owns only patents and that a judgment may result in Taasera's bankruptcy;

(2) Jon Scahill manages both Taasera and Quest;

(3) Taasera and Quest share common contact information as reflected in the USPTO's assignment documents, which lists Quest's New York address as the address for correspondence related to five of the Asserted Patents;

(4) Quest views Taasera as a source of profits because Quest's website advertises Taasera's patent portfolio and the now-dismissed EDTX Action between Taasera and Palo Alto; and

(5) Quest has paid certain debts on behalf of Taasera, such as $250,000, owed by Taasera for acquiring four of the Asserted Patents.

(Dkt. No. 90 at 23–25).

Taasera replies that Palo Alto fails to discuss the other remaining *Platina Bulk* Factors:

(1) Taasera and Quest do not disregard corporate formalities because Taasera is an independent subsidiary formed in Texas, which actively develops IT security software;

(2) Taasera and Quest have separate bank accounts and do not commingle funds;

(3) Taasera and Quest do not share office space or a common address;

(4) Taasera holds itself out on a separate web address apart from Quest; and

(5) Taasera does not intermingle property because Taasera is the sole owner of the Asserted Patents.

(Dkt. No. 98 at 13).

The Court agrees with Taasera and concludes that Quest and Taasera are not alter egos. Addressing each *Platina Bulk* Factor in turn, the Court initially considers the "corporate formalities," "degree of business discretion shown by the allegedly dominated corporation," and "whether the dealings between the entities are at arm[']s length" factors and finds that Palo Alto concedes them given that they are unaddressed. Palo Alto contends that Taasera and Quest are undercapitalized based solely on Quest's representation in its SEC filing that neither Quest nor Taasera could afford to pay any judgment. (Dkt. No. 90 at 23; Dkt. No. 21-12 at 20). Whether a judgment will be rendered against Taasera is hypothetical and entirely speculative. In fact, Taasera's assets are primarily comprised of the Asserted Patents. (*Id.*). Therefore, the undercapitalization factor weighs against piercing the corporate veil.

Quest and Taasera share management given that Jon Scahill is Quest's CEO, and Quest is listed as the sole manager of record on Taasera's Texas Certification of Formation. (Dkt. No. 21-11 at 2–3; Dkt. No. 87-1 ¶ 3). However, common management among parent and subsidiary companies is not uncharacteristic. *See, e.g.*, *In re Aluminum Warehousing Antitrust Litig*., No. 13-MD-2481 (KBF), 2015 WL 892255, at *16 (S.D.N.Y. Mar. 3, 2015) ("It is commonplace for

executives to hold several roles at several affiliated companies.  But so long as separate corporate formalities are maintained, the mere fact that some employees of a parent are also officers of a subsidiary does not imply that the subsidiary is an agent of the parent."); *Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335, 349–50 (S.D.N.Y. 2013) ("That a subsidiary shares employees, officers, and directors with a parent does not permit the corporate form to be disregarded.").  In the context of closely held businesses, "corporate formalities are more relaxed than in a large public corporate setting," which should be considered as a factor in the domination analysis.  *In re Adler*, 467 B.R. 279, 288 (Bankr. E.D.N.Y. 2012).  For example, in *In re Adler*, the court observed that where Mr. Adler was the sole owner, officer, employee, and director of each of the corporations, and the corporations all operated out of the same office and had the same telephone numbers, the court held that these facts are not uncommon for closely held corporations and are not enough to pierce the corporate veil.  467 B.R. at 291.  Similarly, in this case, although Taasera and Quest share management, Palo Alto points to no instances in which Taasera and Quest share a common office space, address, or telephone numbers or intermingle funds or property.  The Court therefore finds that factors three, five, and ten each weigh against piercing the corporate veil.

Palo Alto also argues that Quest utilizes Taasera as an independent source of profit given that Quest advertises Taasera's patent portfolio and litigation on its website.  (Dkt. No. 90 at 23).  However, "[Palo Alto]'s reliance on [Quest]'s personal website to show [Quest]'s domination of [Taasera] is completely unavailing."  *Handal & Morofsky, LLC v. Viatek Consumer Prods. Grp., Inc.*, No. 18 CIV. 1887 (ER), 2018 WL 5886122, at *7 (S.D.N.Y. Nov. 8, 2018).  Merely publishing information about a subsidiary and its related litigation is insufficient to show complete

domination.  The Court concludes that factor eight weighs against a finding of piercing the corporate veil.

Finally, Palo Alto relies on Taasera's acquisition of five Asserted Patents via a $250,000 capital advance from Quest to assert that Quest has paid Taasera's debts and therefore completely dominates Taasera.  (Dkt. No. 90 at 23).  In utilizing a capital advance to purchase some of the Asserted Patents, Quest exercised some dominion over Taasera; however, given the relative infancy of Taasera as a newly organized business entity, the Court also considers the policy of "encourag[ing] [] business development."  *See Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 138 (2d Cir. 1991) (stating that a jury must decide "whether—considering the totality of the evidence—the policy behind the presumption of corporate independence and limited shareholder liability—encouragement of business development—is outweighed by the policy justifying disregarding the corporate form—the need to protect those who deal with the corporation.").  Ultimately, the Court finds that this factor is neutral.  Based on the foregoing, the majority of the *Platina Bulk* Factors weigh against a finding that Quest exercises complete dominion over Taasera.

### 2.   *Fraud*

Assuming that Palo Alto showed that Quest completely dominates Taasera, Palo Alto must also demonstrate that "such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil."  *Thrift Drug*, 131 F.3d at 97.  Palo Alto cites to no evidence to contravene this factor, and the Court finds that Quest has not dominated Taasera to perpetrate any fraud or wrong.[4]

---

[4] "A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion."  Local Rule CV-7(d).

**B.  The Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. No. 89)**

i.  Case or Controversy

Quest moves to dismiss the above-captioned case, arguing that there is no case or controversy since it has no right to the Asserted Patents.  (Dkt. No. 89 at 11).  In a patent-infringement case, Quest contends that standing rests with the patent owner or the exclusive licensee, which the Amended Complaint does not allege.  (*Id.*).  Rather, according to Quest, "Taasera is the sole owner of all right, title, and interest in and to the Asserted Patents."  (*Id.*).  Quest also argues that no case or controversy exists between itself and Palo Alto as Quest has never taken affirmative action to enforce any right to the Asserted Patents.  (*Id.* at 12).  Instead, the only basis within the Amended Complaint for the declaratory judgment action, Quest asserts, is the EDTX Action filed by Taasera.  (*Id.*).  Although Palo Alto pleads that Taasera "(alone or together with Quest)" negotiated or entered into one or more patent acquisition agreements for any number of the Asserted Patents or that Taasera entered into agreements with Quest concerning enforcement of the Asserted Patents, Quest argues that the private agreements are wholly unrelated to Palo Alto and Palo Alto's infringement.  (*Id.* at 13).

The Court agrees with Quest.  Palo Alto fails to refute Quests' arguments, and Palo Alto neither disputes nor addresses whether Quest is legally entitled to enforce the Asserted Patents or whether Quest has taken any such action to do so.  The only source for such contentions is Palo Alto's Amended Complaint.  (*See* Dkt. No. 21).  In it, Palo Alto pleads: (1) "Taasera Licensing (alone or together with Quest) negotiated and/or entered into one or more agreements with Daedalus Blue LLC ('Daedalus'), with its principal place of business in Bronxville, NY within this [J]udicial District, for the acquisition of five of the Asserted Patents"; (2) "Taasera Licensing (alone or together with Quest) negotiated and/or entered into one or more agreements with

Fabricant LLP relating to the enforcement of the [Asserted Patents] against Palo Alto Networks"; and (3) "Taasera Licensing has entered into one or more oral or written agreements with Quest in this District relating to Taasera Licensing's enforcement of its patents against Palo Alto Networks." (*Id.* ¶¶ 7, 8, 9). Based on Palo Alto's pleadings alone, the Court is unable to ascertain whether Quest obtained any legal right to enforce the Asserted Patents from Taasera. Even if Quest were legally entitled to file suit asserting infringement of the Asserted Patents, there must be some conduct or affirmative act taken by Quest which would demonstrate an intent to enforce them, and the Court finds none. *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380–81 (Fed. Cir. 2007) ("In the context of conduct prior to the existence of a license, declaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee."). Further, although Taasera, a legally independent subsidiary of Quest, filed the EDTX Action, there is no indication from this filing that Quest was related to that action in any capacity or had any standing to join such suit. Accordingly, Palo Alto has failed to establish a case or controversy that would support the exercise of subject matter jurisdiction.

ii.   Alter Ego

In the context of subject matter jurisdiction, Palo Alto and Quest dispute whether Quest and Taasera are alter egos. (Dkt. No. 89 at 13; Dkt. No. 91 at 12). For purposes of resolving Palo Alto's alter ego argument in regard to Taasera's Motion to Dismiss for Lack of Personal Jurisdiction, the Court concluded that Taasera and Quest are not alter egos under either of the competing standards asserted by Palo Alto or Taasera. *See* Part I.A.iii. In the parties briefing of Quest's Motion to Dismiss for Lack of Subject Matter Jurisdiction, Quest and Palo Alto propose

the same competing alter ego theories.  (Dkt. No. 89 at 14; Dkt. No. 91 at 12).  The Court similarly finds that under either standard, Taasera and Quest are not alter egos of each other.  For the complete-domination prong, Palo Alto reasserts its arguments raised in opposition to Taasera's Motion to Dismiss for Lack of Personal Jurisdiction to also oppose Quest's Motion to Dismiss for Lack of Subject Matter Jurisdiction.  (*See* Dkt. No. 90 at 23–25; Dkt. No. 91 at 12–15).  For the same reasons in granting the Motion to Dismiss for Lack of Personal Jurisdiction, the Court therefore finds that Quest does not assert complete dominion over Taasera.  However, as to the fraud prong concerning Taasera's Motion to Dismiss for Lack of Personal Jurisdiction, Palo Alto failed to argue that Quest dominated Taasera to perpetrate a fraud or wrong.  *See* Part III.A.iii.2. Here, for subject matter jurisdictional purposes, Palo Alto now asserts that "Quest abuses the corporate form to perpetuate a fraud."  (Dkt. No. 91 at 15).

In its Motion to Dismiss for Lack of Subject Matter Jurisdiction, Quest argues that "Palo Alto has failed to show a wrongful or unjust act arising from the alleged dominion," since the Amended Complaint identifies no fraud or wrong committed against Palo Alto.  (Dkt. No. 89 at 17).  Quest also argues that Palo Alto's claims do not involve any monetary issues, and whether Quest or Taasera are undercapitalized is therefore irrelevant to this case.  (*Id.* at 18).  Palo Alto responds that Quest is intentionally undercapitalizing Taasera to avoid an adverse award of attorneys' fees.  (Dkt. No. 91 at 15).  Palo Alto asserts that it is fraudulent and unjust for this Court to permit such "purposeful abuse of the corporate form to avoid potential judgments of this Court." (*Id.* (citing *Universitas Educ., LLC v. Benistar*, No. 20 Civ. 00738 (JAM), 2021 WL 965794, at *10 (D. Conn. Mar. 15, 2021)).

Palo Alto fails to articulate a fraud perpetrated by Quest or Taasera.  Palo Alto argues only that Quest intentionally undercapitalized Taasera to avoid an award of attorneys' fees, but as this

Court already noted, such an award is entirely speculative, as is Palo Alto's assertion as to Quest's intent or state of mind.  Palo Alto points to Quest's SEC filing, which provides that neither Quest nor Taasera could afford to pay any judgment, but Palo Alto does not explain how Taasera's funding is fraudulent.  Further, *Benistar*, cited by Palo Alto, is inapposite because it involved enforcing an existing prior judgment against various individuals and entities under an alter ego theory.  *Benistar*, 2021 WL 965794, at *1.  The *Benistar* court characterized the disposition of its case as follows:

> This lawsuit is the latest stage of a long-running effort by plaintiff Universitas Education, LLC ("Universitas") to collect the proceeds of life insurance policies that were stolen more than a decade ago. Universitas brings this action to enforce a prior judgment against 11 individuals, trusts, and companies that were not parties to the prior action, but that are allegedly "alter egos" and part of the same "criminal enterprise" as the judgment debtors.

*Id.*  These are not the facts here.

### C.  Failure to State a Claim

In the Motions to Dismiss, Taasera and Quest each alternatively move to dismiss Palo Alto's Amended Complaint for failure to state a claim upon which relief can be granted.  (Dkt. No. 87 at 22; Dkt. No. 89 at 18).  In light of the Court's rulings dismissing Taasera for lack of personal jurisdiction and Quest for lack of subject matter jurisdiction, the Court does not reach the Motions to Dismiss under Rule 12(b)(6).

### IV. CONCLUSION

The Court finds that the Motion to Dismiss for Lack of Personal Jurisdiction (Case No. 2:22-md-3042, Dkt. No. 11; Case No. 2:22-cv-314, Dkt. No. 87) and the Motion to Dismiss for Lack of Subject Matter Jurisdiction (Case No. 2:22-md-3042, Dkt. No. 14; Case No. 2:22-cv-314, Dkt. No. 89) should be and hereby are **GRANTED**.  Accordingly, the above-captioned case is **DISMISSED WITHOUT PREJUDICE**, and as a part hereof, Palo Alto's Motion for Partial

Judgment on the Pleadings of Patent-Ineligibility Under 35 U.S.C. § 101 (Case No. 2:22-md-3042, Dkt. No. 71; Case No. 2:22-cv-314, Dkt. No. 109) is **DENIED AS MOOT**.  The Clerk of the Court is directed to **CLOSE** Case No. 2:22-CV-00314-JRG.  The Clerk is further directed to inform the Clerk of the Panel of this action and transmit a copy of this Order to the same. MDL Rule 10.1(a).

 **So ORDERED and SIGNED this 15th day of March, 2023.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE