PUBLIC VERSION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| TAASERA LICENSING LLC § § *Plaintiff,* § § v. § § MUSARUBRA US LLC, D/B/A TRELLIX § § *Defendant.* § § § | Consol. Civ. A. No. 2:22-MD-03042-JRG <br><br> Indiv. Civ. A. No. 2:22-CV-00427-JRG |

## **DEFENDANT MUSARUBRA US LLC D/B/A TRELLIX'S OPPOSED MOTION TO PARTIALLY DISQUALIFY DR. ERIC COLE**

## I.   INTRODUCTION

Plaintiff Taasera Licensing LLC's ("Taasera" or "Plaintiff") disclosed expert, Dr. Eric Cole, should be disqualified from opining on infringement, secondary considerations of nonobviousness, and any other topics that require reviewing and testifying about Defendant Musarubra US LLC, d/b/a Trellix's ("Trellix" or "Defendant") confidential information. Dr. Cole previously served as Chief Technology Officer ("CTO") and Senior Vice President ("SVP") at McAfee, Inc. ("McAfee"), Trellix's predecessor and the entity responsible for the initial design, development, and launch of nearly all of the accused products at issue in this case. As shown below and the attached exhibits, Dr. Cole has personally and publicly stated that he played an "integral role" in "strongly influencing [McAfee's] strategic direction" and served as a "key leader in the execution of technology strategy for technology platforms" and also served to "redesign [McAfee's] entire product line" and "reposition their technology and intellectual property."

If Dr. Cole were permitted to serve as an infringement expert in this case, his past confidential relationship with McAfee and access to an extensive degree of confidential information regarding accused products would present an extreme risk of harm and prejudice to Trellix. Trellix therefore files this Motion seeking an order disqualifying Dr. Cole as an expert with respect to infringement, secondary considerations of nonobviousness, and any other topic that requires access to Trellix confidential information.[1] To the extent the Court believes there is insufficient evidence related to Dr. Cole's relationship with McAfee or his access to McAfee's confidential information relevant to this suit, Trellix respectfully moves for a hearing on this Motion and an opportunity to examine Dr. Cole on voir dire during the same.

---

[1] Trellix does not object to Dr. Cole serving as an expert on other topics, such as claim construction and invalidity, to the extent Dr. Cole's opinions would not rely upon or require access to or testimony regarding Trellix's confidential information.

## II. FACTUAL AND PROCEDURAL BACKGROUND

From 2009 to 2010, Dr. Cole was SVP and CTO of the Americas at McAfee. (*See* Ex. A at 1). Below is the description from Dr. Cole's curriculum vitae ("CV") regarding his position at McAfee, wherein Dr. Cole emphasizes his strategic and technical role:

> **McAfee: 2009-2010**
> *SVP, CTO of the Americas*
> Responsible for influencing the company's strategic and technical direction, development, and growth as the global leader in digital security solutions. Worked closely with CEO, EVP of Product Operations, and other stakeholders to establish a product vision and road map to achieve McAfee's goals.

(*Id.*). Further, by his own admission, Dr. Cole was "engaged in identifying and capturing intellectual property," (Ex. B), oversaw "key technologists and evangelists in product development and the field" including "prototyping of new products/technology/research," (Ex. C), and was recruited to "redesign [McAfee's] entire product line." (Ex. D). In fact, Dr. Cole appears in recent videos on his own YouTube channel stating that he "joined McAfee as CTO to reposition their technology and intellectual property," was brought in to "revamp the company," and came up with a "five-year plan to basically rebuild the entire product line."[2]

At the time of Dr. Cole's employment in 2009-10, McAfee executives were subject to standard confidentiality agreements as part of their employment.[3] For example, McAfee's default Change of Control and Retention Agreement at the time of Dr. Cole's employment in February 2010 included confidentiality provisions. (*See* Ex. E § 9(a)). McAfee also had in place a Code of Business Conduct and Ethics, which contained confidentiality provisions. (*See* Ex. F § VI; *see also* Ex. G (McAfee Corporate Governance webpage dated April 16, 2010, showing link to access and

---

[2] *See* https://www.youtube.com/watch?v=kUyZtW3I_wg (at 22:41) (May 31, 2021); https://www.youtube.com/watch?v=gJol44Z4c74 (at 22:40, 23:47) (Mar. 9, 2023).

[3] In *McAfee, LLC v. Kinney*, a court in this District recognized McAfee's employment agreements and confidentiality provisions and made them public record. *See* Civ. A. No. 4:19-CV-463 (Dkt. No. 96 at 1–2) (E.D. Tex. Aug. 29, 2019).

download Code of Business Conduct and Ethics); Ex. H at 20 (McAfee 2010 Form 10-K showing "code of conduct" in place)). McAfee still has a Code of Conduct with confidentiality obligations for McAfee employees. (*See* Ex. I at 26 (2023 McAfee Code of Conduct)).

As shown by McAfee's website as of April 10, 2010, at least McAfee ePolicy Orchestrator, McAfee Application Control, McAfee Mobile, McAfee Policy Auditor, and McAfee Host Intrusion Prevention were available during Dr. Cole's tenure. (*See* Ex. J). Versions of each of these products are accused of patent infringement in this case. (Dkt. No. 1 at ¶ 35).

In 2021, McAfee sold its Enterprise business, and in 2022, the spun-off Enterprise business was renamed Trellix. (Ex. K).

On March 30, 2023, Plaintiff initially disclosed Dr. Cole as an expert. (Ex. L at 20). However, Dr. Cole's complete background, list of consulting clients, and former testimony experience were omitted from Plaintiff's disclosure. This omission led to an extensive amount of back-and-forth between Plaintiff and Defendants Check Point Software Technologies Ltd. ("Check Point"), Trend Micro Inc. ("Trend Micro"), Fortinet, Inc. ("Fortinet"), Palo Alto Networks, Inc. ("PAN"), Crowdstrike, Inc. and CrowdStrike Holdings, Inc. ("CrowdStrike"), and Trellix (collectively, the "MDL Defendants") to get a complete disclosure of Dr. Cole, pursuant to Paragraph 5(e) of the Court's Protective Order. (*Id*. at 9–19). In response to numerous emails from MDL Defendants asking for a complete disclosure of Dr. Cole's credentials and prior engagements, Plaintiff took the position in an email dated April 12 that Dr. Cole would only agree to disclose a complete list of clients "to the Defendants that sign an NDA." (*Id*. at 13–14). Although Plaintiff eventually withdrew its unusual demand and restriction on disclosing what should have been provided with Dr. Cole's initial disclosure on March 30, Plaintiff's disclosure with respect to Dr. Cole was still incomplete until no earlier than April 21, 2023, when Dr. Cole's work for all clients and former testimony was finally provided by Plaintiff. (*Id*. at 10). On April 26, Trellix

objected to Dr. Cole on the grounds that he had a confidential relationship with McAfee. (*Id*. at 9). Plaintiff and Trellix were unable to resolve Trellix's objection. (*Id*. at 1–9).

The below timeline shows the extensive discussions between Plaintiff and MDL Defendants regarding Dr. Cole:

- March 30: Taasera first discloses Dr. Cole as an expert. (*Id*. at 20).

- April 5: Check Point first requests a list of Dr. Cole's consulting clients. (*Id*. at 19).

- ████████████████████████████████████████████████████████████████████████████████

- April 6: CrowdStrike objects and requests additional information regarding Dr. Cole's consulting work. (*Id*. at 18).

- April 7: Taasera then sends the same email regarding Dr. Cole's work, verbatim, as the day before. (*Id*. at 17).

- April 7: Trend Micro and Fortinet object and request additional information regarding Dr. Cole's consulting work. (*Id*. at 16).

- April 7: CrowdStrike reiterates its request for additional information concerning Dr. Cole's consulting activities, ████████████████████████████████████ ████████████████████ (*Id*. at 15).

- April 7: Check Point further objects and requests further details. (*Id*. at 14).

- April 11: After no response from Taasera for multiple days (during which time the initial 10 day period would have passed), Check Point again follows up on the request for further details. (*Id*.).

- ████████████████████████████████████████████████████████████████████████████████

- April 13: ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ Trend Micro and Fortinet indicate that "the information provided to date is not enough for either Defendant to determine whether disclosure of confidential information would cause a sufficient risk of unfair prejudice or competitive disadvantage." (Ex. M at 1).

4

- April 18: Taasera provides a list of consulting clients ▮▮▮▮▮▮▮▮▮▮ (Ex. L at 11–12).

- April 19: Defendants request further information ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ (*Id*. at 11).

- April 21: After business hours, at 5:38 p.m. on a Friday, ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮, asks to "[l]et us know if you have any other questions," and requests confirmation that "***defendants*** no longer object to Dr. Cole under ¶ 5(e) of the PO." (*Id*. at 10) (emphasis added).

- April 26: Trellix objects to Dr. Cole based on his work for McAfee. (*Id*. at 9). Taasera's counsel requests a call to discuss McAfee's objection, and Trellix's counsel calls and leaves a voicemail message and arranges for April 27 meet-and-confer.

- April 27: Counsel for Taasera and Trellix confer via telephone, at which time Taasera's intention to use Dr. Cole as an infringement expert was first disclosed.

- April 27: Immediately following up on the telephonic conference, Trellix provides its written position and requests additional information from Taasera regarding Dr. Cole, based on his prior work for McAfee. (*Id*. at 7–8).

- May 3: After nearly a week with no response from Taasera, Trellix follows up and requests any position or information Taasera can provide. (*Id*. at 7).

- May 4: Taasera responds, arguing for the first time that Dr. Cole "did not receive confidential information relevant to this case." (*Id*. at 6–7).

- May 5: Trellix provides additional, extensive examples of Dr. Cole's statements including that he was involved in product design, product vision, prototyping, strategic/technical development, and intellectual property during his time at McAfee. (*Id*. at 3–6).

- May 8: Taasera takes the position that Dr. Cole "didn't even work for [Trellix]," despite their accusation that McAfee products infringe, and threatens to provide Dr. Cole with Trellix confidential information before the resolution of the objection. (*Id*. at 3).

- May 9: Trellix again makes its position clear, as the parties apparently reached an impasse. (*Id*. at 1–2).

### III. LEGAL STANDARDS

#### a. Disqualification of Experts

Federal courts have the inherent power to disqualify experts. *Koch Refining Company v. Boudreaux*, 85 F.3d 1178, 1181 (5th Cir. 1996). Courts disqualify experts in these circumstances to "protect the integrity of the judicial process by ensuring that experts do not use, even

5

unwittingly, confidential information that they learned from a party in the course of an earlier engagement against that party in a later lawsuit." *Auto-Kaps, LLC v. Clorox Co.*, No. 15 CIV. 1737 (BMC), 2016 WL 1122037, at *5 (E.D.N.Y. Mar. 22, 2016). In patent cases, the law of the regional circuit governs the issue of disqualification of an expert witness. *See In re Pioneer Hi–Bred Int'l, Inc.*, 238 F.3d 1370, 1374 (Fed. Cir. 2001).

The Fifth Circuit has adopted a two-step analysis in disqualification cases, asking (1) whether it was objectively reasonable for the opposing party to conclude they had a confidential relationship with the expert, and (2) whether the opposing party disclosed confidential or privileged information relevant to the instant case to the expert. *Id.* (citation omitted). A moving party must prove that the answers to both questions are "yes" in order to successfully disqualify an expert. *Id*; *see also Mobile Telecomms. Tech. v. LG Elecs. Mobilecomm U.S.A., Inc.*, No. 2:13-CV-947-JRG-RSP, 2015 WL 11117313 (E.D. Tex., July 22, 2015).

## IV. ARGUMENT

### a. Dr. Cole is a former McAfee CTO and SVP and should be partially disqualified as an expert.

Dr. Cole should be disqualified because (i) a confidential relationship existed with McAfee by virtue of his position as CTO and SVP and his various agreements and contracts with McAfee, (ii) McAfee unquestionably disclosed confidential information to Dr. Cole regarding precursors of the accused products during his tenure, and (iii) the public interest in allowing Dr. Cole to testify is greatly outweighed by the danger of harm to Trellix. *See Koch*, 85 F.3d at 1181. This case is still in its early stages—for example, claim construction has not yet occurred, and opening expert reports are not due until September 18, 2023. (*See* Dkt. No. 209). Plaintiff will not suffer significant prejudice from having to retain a different expert for infringement. However, if Dr. Cole were to testify as an expert, unable to extricate McAfee's confidential information from his knowledge, Trellix would be unduly prejudiced.

6

With respect to the first prong, Dr. Cole's high-level position as McAfee's Chief Technology Officer of the Americas and his research, product development, and intellectual property responsibilities alone show a confidential relationship. *See, e.g. Lake Cherokee Hard Drive Tech., L.L.C. v. Bass Computers, Inc.,* No. 2:10-CV-216-JRG, 2012 WL 708354, at *3 (E.D. Tex. Mar. 5, 2012) (disqualifying a former senior director employed by defendant, noting that the former employee "was Senior Director of a storage product group and very likely had access to Marvell's highly confidential roadmaps regarding storage . . . . The knowledge that Foland gleaned from Marvell is germane to this litigation, especially to Lake Cherokee's infringement claims and analysis."); *Sensormatic Elec. Corp. v. WG Sec. Prods.,* No. 2:04-CV-167, 2006 WL 5111116, at *3 (E.D. Tex. Feb. 9, 2006) (disqualifying former employee of the plaintiff, noting that the former employee was a named inventor on patent-in-suit, a 30(b)(6) designee of plaintiff in other litigation, and signed confidentiality agreements with plaintiff); *WesternGeco L.L.C. v. Ion Geophysical Corp.,* No. 09-cv-1827, 2010 WL 2266610, at *1–3 (S.D. Tex. June 2, 2010) (disqualifying former employee of plaintiff's predecessor "[b]ased on the nature and extent of Mr. Workman's employment relationship" with plaintiff's predecessor, and noting that the former employee had worked on technology related to the patents-in-suit and received confidential information). There is no reasonable question that Dr. Cole—like all other McAfee employees—was subject to confidentiality agreements and obligations as part of his employment with McAfee. (*See* Exs. E–I). To the extent Dr. Cole and Plaintiff contend that Dr. Cole was not subject to a confidentiality agreement, and in light of representations by Plaintiff regarding Dr. Cole's responsibilities at McAfee, Trellix requests permission to examine Dr. Cole on voir dire at an in-person hearing.[4]

---

[4] On at least two occasions, Trellix requested that Dr. Cole provide additional information regarding his role at McAfee and corresponding confidentiality obligations. (Ex. L at 5, 8). Plaintiff and Dr. Cole did not provide substantial information in response to Trellix's requests,

Turning to the second prong, Dr. Cole unquestionably received confidential information relating to the technology at issue in this case. Dr. Cole has previously stated that his responsibilities included redesigning McAfee's existing products, new product development, and assisting in collecting and protecting intellectual property rights. (*See* Exs. A–D); *see also* pp. 2–3 *supra* (showing Dr. Cole's public statements regarding his responsibilities at McAfee). Versions of at least five products accused in this case—spanning over a total of 8 of the 11 asserted patents—were sold by McAfee at the time when Dr. Cole was CTO and SVP and was involved in overseeing these products. (Ex. J). This case goes beyond mere similarities between the technologies at issue, which alone would be sufficient to warrant disqualification. *See Lake Cherokee*, 2012 WL 708354, at *3 ("Foland worked on Marvell products that are similar to those that are now accused of infringement."). Indeed, Dr. Cole was responsible for earlier versions of the very products that are accused in this case. *See Mobile Telecommunications Techs., LLC v. LG Elecs. Mobilecomm U.S.A., Inc.*, No. 2:13-CV-947-JRG-RSP, 2015 WL 11117313, at *1 (E.D. Tex. July 22, 2015) ("The real dispute centers around whether the prior work was relevant to the current case. On that point, the Court is heavily influenced by the fact that the parties agree that the same devices accused in this case were accused in the earlier matter. Furthermore, the time frames are nearly overlapping. Plaintiff has not been able to show that the issues do not also overlap."). Plaintiff has taken the position that because Dr. Cole "didn't even work for [Trellix]" he did not receive confidential information relevant to this case. (*See* Ex. L). Such an argument is irreconcilable with the fact that Plaintiff's infringement allegations rely heavily on McAfee products which were available as early as 2009-10, during Dr. Cole's tenure with the company. (*See, e.g.,* Dkt. No. 1 ¶¶ 41–44, 55, 69–72, 83–89, 100–104, 115–121, 132–139, 150–155, 166–

---

only stating that Dr. Cole "has no record of signing an NDA or confidentiality agreement with McAfee," without affirmatively stating whether Dr. Cole was, in fact, bound by confidentiality obligations to McAfee. (*Id*. at 6).

8

171). Moreover, in the parties' correspondence leading up to this Motion, Plaintiff's counsel suggested that "Dr. Cole did not direct or work with product teams during his time at McAfee." (Ex. L at 3). Setting aside the numerous public statements made by Dr. Cole which contradict Plaintiff's contention, *see* pp. 2–3 *supra*, the notion that McAfee's Chief Technology Officer and Senior Vice President did not work with any product teams is implausible. *WesternGeco*, 2010 WL 2266610, at *2 ("[I]t is difficult if not impossible to imagine how Mr. Workman could have performed his apparent high-level function as Chief Geophysicist in charge of projects related to marine seismic cables if confidential or privileged information that is substantially related to the patents-in-suit were not provided to him.").

Finally, the public interest does not weigh in favor of permitting Dr. Cole to testify with respect to infringement. Dr. Cole's previous position at McAfee presents a conflict of interest and allowing him to serve as an infringement expert regarding products he oversaw as CTO during his time with McAfee risks tarnishing the appearance of the judicial process. *See Sensormatic*, 2006 WL 5111116, at *4 ("Should Mr. Hansen continue in his employment in this case, he will be acting under, at the very least, a potential conflict of interest. Mr. Hansen will be forced to choose between complying with his agreements with Sensormatic (to maintain confidentiality and to cooperate) and fully advising the party who seeks to use his services in this case . . . ."). Further, Trellix does not seek Dr. Cole's disqualification as an expert on issues relating to claim construction and validity, other than specific topics that may involve Trellix's designated materials (*e.g.*, commercial success as a secondary consideration of nonobviousness). *See Lake Cherokee*, 2012 WL 708354, at *3 ("While the public interest clearly weighs in favor of curtailing Foland's access to Marvell's confidential documents and his ability to render opinions or advice regarding Marvell's alleged infringement, the public interest weighs equally clearly in favor of allowing Lake Cherokee an opportunity to consult with the actual inventor of the patents-in-suit on issues

relating to claim construction and validity."). Additionally, because Plaintiff has ample time to retain another infringement expert before opening expert reports must be served on September 18, and the objection is specific to Trellix, the policies against disqualification of ensuring access to experts and allowing experts to pursue their profession should not be given much weight. *See Sensormatic*, 2006 WL 5111116, at *4 ("[T]he policies against disqualification-ensuring that the parties have access to experts and allowing an expert to pursue his profession-do not outweigh the competing policies under the facts of this case. The court has continued this case and will provide the defendant with an opportunity to replace Mr. Hansen as a witness, if it elects to do so. The court is also not convinced that this order unduly impairs Mr. Hansen's ability to act as a consultant in other litigation.").

### b. Trellix timely objected to Dr. Cole.

During the parties' conferences regarding this Motion, Plaintiff took the position that "Trellix cannot file a motion for a protective order under ¶ 5(e) because its objection to Dr. Cole was untimely and not within the window to object under the PO." (Ex. L. at 6). Trellix substantively disagrees with Plaintiff's argument for the reasons outlined below, but notes that Trellix is not currently moving for a protective order. Instead, Trellix seeks to partially disqualify Dr. Cole from serving as a technical expert witness (most notably as an infringement expert) against Trellix. The record reflects that Trellix has been diligent in trying to resolve this issue—as well as any other potential objectionable issues—since Dr. Cole was initially disclosed by Plaintiff.

Even assuming *arguendo* that Plaintiff is correct that Paragraph 5(e) controls under these circumstances, Trellix has complied with those timing requirements. For example, Paragraph 5(e)'s ten-day objection period is triggered upon delivery of "a current curriculum vitae of the consultant or expert." (Dkt. 162 ¶ 5(e)). What Trellix received on March 30 was neither current nor a complete CV. As a result, Trellix was unable to fully assess its potential objections to Dr.

10

Cole until Plaintiff ████████████████████████████████████████ ██ ultimately provided Dr. Cole's full, current CV information on April 21. *See Martin v. J.A.M. Distrib. Co.*, No. 1:08-CV-298, 2009 WL 1067706, at *3 n.1 (E.D. Tex. Apr. 17, 2009) ("Typically, an expert's curriculum vitae is included within the report, 'including a list of all publications authored in the previous 10 years; a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition,' under Fed. R. Civ. P. 26(a)(2)(B).").

Dr. Cole's CV served on March 30, 2023 states on its face that it was a "current CV as of September 1, 2022" which was seven months outdated the day it was served. (*See* Ex. A at 1). Moreover, Dr. Cole's March 30 CV omitted a complete list of matters within the previous four years in which he testified as an expert and stated that "[o]ngoing cases are not included for client confidentiality." (*Id.* at 7). As a result, the MDL Defendants were required—over the course of many weeks of communications with Plaintiff—to seek a complete list of information that should have been disclosed on March 30. (*See supra* pp. 4–5) (presenting timeline of correspondence). Put simply, Dr. Cole did not disclose a "current CV" with complete list of "current clients"—████████████████████████████████████████████—until multiple weeks later (much of which time was spent waiting for responses from Plaintiff and/or Dr. Cole). (Ex. L at 11–12). ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████ (*Id.* at 11–13).[5]

---

[5] It is telling that Plaintiff never substantively disagreed with the MDL Defendants' requests for additional information about Dr. Cole ████████████████████████████████ ████████████████████████████. In other words, Plaintiff did not dispute that the March 30 CV was deficient and did not disclose all relevant information necessary to determine whether Dr. Cole was objectionable. As such, there should be no real dispute that the March 30 CV was not a "current CV" for purposes of triggering Paragraph 5(e).

11

Further, Plaintiff only recently took the position that Dr. Cole was not, in fact, given access to any confidential information in his role as CTO and SVP, a claim that required further investigation. (Ex. L at 6). Trellix acted with diligence in objecting to Dr. Cole and working with Plaintiff in a good faith attempt to resolve this dispute.[6] *See Godo Kaisha IP Bridge 1 v. Telefonaktiebolaget LM Ericsson*, No. 2:21-cv-213-JRG, (Dkt. No. 79 at 5) (E.D. Tex. Mar. 15, 2022) ("The Court finds that Ericsson acted diligently in pursuing its objection and attempted to resolve the objection in good faith.").

It would do violence to the policy goals of Paragraph 5(e), which is intended to provide a procedure to efficiently resolve all objections to expert witnesses in an effective manner, if each party was required to separately object on each ground each and every time incomplete information regarding the expert was provided in piecemeal fashion. There were more than twenty emails exchanged between Plaintiff and MDL Defendants in the twenty-one days after Dr. Cole was initially disclosed, which would have been well over 100 emails if each Defendant was required to individually note their agreement or disagreement with each email or request for further information to finally receive to a complete disclosure of Dr. Cole's CV. (*See* Ex. L at 10–20). Applying Plaintiff's interpretation of Paragraph 5(e), Trellix should have filed this motion by April 14. However, at that time Plaintiff still had not provided a "current CV" ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id*. at 13). If Trellix had additional objections to the information Plaintiff belatedly disclosed on April 18, when Dr. Cole's client list was finally provided, or on

---

[6] Trellix objected to Dr. Cole on April 26 after receiving Plaintiff's final disclosure email after close of business on Friday, April 21. Over the subsequent weeks, Trellix responded immediately to any of Plaintiff's emails and requests for calls (and in fact followed up after days of silence from Plaintiff to keep the issue moving forward) as described in Section II above. It was not until May 8 that Taasera first indicated the parties were at an impasse. The record reflects Trellix's diligence in attempting to resolve this matter in good faith before filing the instant Motion.

12

April 21, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ Trellix would have had to again object, meet-and-confer and file separate motions. Such an interpretation is patently unreasonable and risks burdening the Court with duplicative motion practice.

Plaintiff's suggestion is also contrary to the parties' course of conduct throughout this case. For example, in negotiating the earlier proposed orders required by the Court, the parties regularly—if not always—treated communications from one defendant as communications on behalf of all MDL Defendants collectively to avoid an unruly and unnecessary amount of email correspondence. Plaintiff's suggestion that the various MDL Defendants' requests for additional information about Dr. Cole would somehow be treated differently when Plaintiff previously benefited from this streamlined approach is puzzling. In fact, Plaintiff itself regularly grouped correspondence with all MDL Defendants together, including in the March 30 disclosure email and its April 21 email providing additional information about Dr. Cole, as shown by Plaintiff's request for MDL Defendants to "please confirm ***defendants no longer object*** to Dr. Cole under ¶ 5(e) of the P.O." (Ex. L at 12) (emphasis added). Plaintiff's understanding mirrored that of the MDL Defendants, who also treated their objections as being proffered jointly on behalf of the group. (*See, e.g.*, Ex. M at 1) ("If Plaintiff expect[s] the Defendants to produce their source code and highly technical and proprietary information that *is* the Defendants' 'secret sauce' of how their products work and how they generate revenues, Dr. Cole can certainly identify his clients under the same Protective Order.") (emphasis in original). Trellix merely acted in accordance with this common understanding based on Plaintiff and the MDL Defendants' months-long course of dealing.

Finally and importantly, Plaintiff's own non-responsiveness to Defendants' requests for additional information delayed resolution of the issue by nearly three weeks. Plaintiff did not respond to Check Point's April 7 email until April 12, did not respond to Trend Micro's April 13

13

email until April 18, and did not respond to Trellix's April 27 email until May 3, often responding only after reminders by Defendants' counsel. (*Id*. at 6–7, 13–14; Ex. M at 1). Dr. Cole was first disclosed approximately six weeks ago on March 30, meaning that Trellix has waited for responses from Plaintiff for nearly half of the relevant time period. In light of Plaintiff's own lack of urgency, it cannot credibly cry foul.

## V.   CONCLUSION

Dr. Cole's past role as Chief Technology Officer and Senior Vice President at McAfee in 2009 and 2010, a time when McAfee sold earlier versions of products that Plaintiff now accuses of infringement, creates a uniquely troublesome conflict of interest with Trellix, McAfee's successor. As such, Dr. Cole should be disqualified from opining on infringement, secondary considerations of nonobviousness, and any other topics that require reviewing and testifying about Trellix's confidential information.

Date: May 12, 2023            Respectfully submitted,

      By: */s/ Nathaniel St. Clair, II*
            Nathaniel St. Clair, II
            Texas State Bar No. 24071564
            nstclair@jw.com
            Blake T. Dietrich
            Texas State Bar No. 24087420
            bdietrich@jw.com
            William T. Nilsson
            Texas State Bar No. 24123350
            wnilsson@jw.com
            **JACKSON WALKER LLP**
            2323 Ross Ave., Suite 600
            Dallas, TX  75201
            Telephone: (214) 953-6000

            **COUNSEL FOR DEFENDANT,**
            **MUSARUBRA US LLC, D/B/A TRELLIX**

## CERTIFICATE OF CONFERENCE

I hereby certify that the parties have complied with the meet and confer requirement in Local Rule CV-7(h) and this motion is opposed. On April 27, 2023 I personally conferred via telephone with counsel for Plaintiff, Daniel Shea. I explained Trellix's objection to Dr. Cole based on his prior role at McAfee as well as Plaintiff's intention to rely on Dr. Cole as an infringement expert as opposed to an invalidity expert, as discussed in the instant motion. However, counsel have been unable to resolve the dispute without court intervention.

            */s/ Blake T. Dietrich*
            Blake T. Dietrich

## CERTIFICATE OF SERVICE

This is to certify that this sealed document was served on all counsel of record via electronic mail on May 12, 2023.

            */s/Nathaniel St. Clair, II*
            Nathaniel St. Clair, II

## **CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

Pursuant to the Court's Protective Order (Dkt. No. 162), I certify that the Court has already granted authorization to seal this document.

Date: May 12, 2023

*/s/Nathaniel St. Clair, II*
Nathaniel St. Clair, II