# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| IN RE: TAASERA LICENSING LLC, PATENT LITIGATION | Case No. 2:22-md-03042-JRG <br><br> **JURY TRIAL DEMANDED** |
| THIS DOCUMENT RELATES TO CIVIL ACTION NO. 2:21-CV-00427-JRG | |
| TAASERA LICENSING LLC, <br><br> Plaintiff, <br><br> v. <br><br> MUSARUBRA US LLC, d/b/a TRELLIX, <br><br> Defendant. | Case No. 2:22-cv-00427-JRG <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF TAASERA LICENSING LLC'S RESPONSE IN OPPOSITION TO DEFENDANT MUSARUBRA US LLC, d/b/a TRELLIX'S OPPOSED MOTION TO PARTIALLY DISQUALIFY DR. ERIC COLE (DKT. 219)**

## TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION .................................................................................................................. 1

II. FACTUAL BACKGROUND ................................................................................................ 2

III. LEGAL STANDARDS ......................................................................................................... 4

IV. ARGUMENT ......................................................................................................................... 5

    A. Trellix's Objection to Dr. Cole is Untimely ............................................................. 6

    B. Trellix Did Not Have a Relationship with Dr. Cole ................................................. 7

    C. Trellix Has Failed to Prove that Dr. Cole Received Confidential or Privileged Information Relevant to This Case ........................................................ 9

    D. Public Policy Does Not Support Disqualification .................................................. 13

    E. There is No Good Cause for a Protective Order ..................................................... 13

V. CONCLUSION .................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Intertrust Techs. Corp. v. Cinemark Holdings, Inc.*,
   No. 2:19-CV-00266-JRG, 2020 WL 2306600 (E.D. Tex. May 8, 2020) ............................8, 12

*Koch Refin. Co. v. Jennifer L. Boudreaux MV*,
   85 F.3d 1178 (5th Cir.1996) ..............................................................................4, 5, 7, 9

*Lake Cherokee Hard Drive Techs., LLC v. Bass Computs., Inc.*,
   No. 2:10-cv-216-JRG, 2012 WL 708354 (E.D. Tex. Mar. 5, 2012).........................................12

*ReedHycalog UK, Ltd. v. Baker Hughes Oilfield Operations., Inc.*,
   251 F.R.D. 238 (E.D. Tex. 2008)...........................................................................................5

*Return Mail, Inc. v. United States*,
   107 Fed. Cl. 459 (Fed. Cl. 2012) ........................................................................................12

*Stone Connection, Inc. v. Simpson*,
   No. 4:07-cv-431, 2008 WL 1927033 (E.D. Tex. Apr. 28, 2008) ........................................5, 13

*WesternGeco LLC v. Ion Geophysical Corp.*,
   No. 09-cv-1827, 2010 WL 2266610 (S.D. Tex. June 2, 2010)...................................................8

**Other Authorities**

8 C. Wright & A. Miller, Federal Practice & Procedure § 2043 (2010).....................................5, 6

Fed. R. Civ. P. 26(c) ...................................................................................................................5

Fed. R. Civ. P. 26(c)(1)(G) .........................................................................................................5

I.      **INTRODUCTION**

Plaintiff Taasera Licensing LLC ("Taasera" or "Plaintiff") hereby opposes the Motion to Partially Disqualify Dr. Eric Cole filed by Defendant Musarubra US LLC, d/b/a Trellix ("Trellix" or "Defendant") (the "Motion")[1]

Trellix seeks to partially disqualify Dr. Eric Cole from serving as Taasera's expert in this case based on his work over a decade ago for McAfee, an entity that after several transactions partially became Trellix in 2022. Dr. Cole worked for only two years at McAfee until it was acquired by Intel in 2011, and his work had nothing to do with the products accused of infringement in this case.

Trellix's Motion should first be denied because it is untimely. Dr. Cole was disclosed to Trellix under the Protective Order (Dkt. 162) in this action on March 30, 2023. The Protective Order provides that objections to experts or consultants must be made within 10 days of the disclosure, and a motion for protective order must be made within 15 days of such a disclosure. Despite other defendants in the MDL objecting and/or requesting additional information regarding Dr. Cole, Trellix remained silent and did not present its objection to Dr. Cole until April 26. Waiting 27 days to object to an expert in violation of the Protective Order has caused prejudice to Taasera by casting a cloud over whether Dr. Cole will be able to testify against Trellix for over half of the fact discovery period. This delay in violation of the Protective Order alone is sufficient to deny the Motion.

On the merits, Trellix cannot meet its burden to show that Dr. Cole received confidential or privileged information relevant to this case. Trellix's request to *voir dire* Dr. Cole is a direct admission that it lacks the evidence it needs to prevail on its Motion. Dr. Cole was hired at McAfee

---

[1] Due to the emergent nature of this Motion, requesting disqualification of an expert that was disclosed in March, Taasera is filing this brief ahead of schedule.

in a unique role, to serve as a famous customer-facing technology evangelist at a time when McAfee was in direct negotiations to be purchased by Intel. Dr. Cole interfaced with customers, delivered keynotes and other presentations, and was the public face of McAfee from April 2009 to May of 2011, when that acquisition occurred. Dr. Cole did not design products and did not supervise the product development team. Dr. Cole did not have access to and did not develop or work on McAfee's source code. Dr. Cole is not a named inventor on any McAfee patents or patent applications from his brief time there. Trellix presents no evidence to the contrary.

Trellix argues that, because "earlier versions" of the products accused of infringement in this case were available from McAfee in 2010 while he worked there, that he must have received confidential information regarding this case. This is incorrect for two reasons. One, there is an extremely low likelihood that the cybersecurity products available in 2010 bear any resemblance to the modern products accused of infringement in this case, aside from sharing marketing names. Two, if the products were already available in 2020; that necessarily means that they were designed and developed prior to his arrival.

Trellix presents no facts to support its position and submits no documents and no declarations from any witnesses stating that Dr. Cole was subject to a confidentiality agreement and received confidential information relevant to this case. For these reasons, Trellix cannot meet its burden and its Motion should be denied.

## II.   FACTUAL BACKGROUND

This case was filed on October 31, 2022, and consolidated into the already-existing Multi-District Litigation *In Re: Taasera Licensing LLC Patent Litigation*, Case No. 2:22-md--03042-JRG thereafter. On March 30, 2023, Taasera disclosed Dr. Eric Cole to all defendants as its proposed technical expert who may receive confidential information pursuant to Paragraph 5(e) of the Protective Order in this case. Ex. 1, March 30, 2023 E-mail from Shea disclosing Experts.

Counsel for Taasera also provided Defendants with a copy of Dr. Cole's *curriculum vitae*, as well as an executed undertaking to the Protective Order. As recognized by Trellix, the CV that its counsel received on March 30 contained a description of his work at McAfee. Dkt. 219 ("Mot.") at 2.

Despite receiving objections and/or requests from other Defendants regarding Dr. Cole's experience and history, Trellix did not communicate in any way with counsel for Taasera until it objected via e-mail on April 26, 2023. Ex. 2, April 26, 2023 E-mail from Dietrich to Shea. Trellix's objection is based on Dr. Cole's work for McAfee, where he spent approximately two years as a Senior Vice President, Chief Technology Officer of the Americas until McAfee was acquired by Intel in the Spring of 2011.

Dr. Cole did not work for the Defendant, Trellix, which was recently formed in 2022. McAfee Corporation, which still exists, was founded in 1987 as McAfee Associates. Ex. 3. In 2010, Intel purchased McAfee in a deal valued at $7.68 billion. *Id.* Intel re-branded McAfee as Intel Security and announced in 2011 that it was developing cyber-security products "for use by government and intelligence agencies." *Id.* In 2017, Intel spun its Intel Security unit off into a new company, re-named McAfee LLC. Ex. 4. McAfee Enterprise was sold in 2021 to a private equity firm, which also purchased another cybersecurity company named FireEye at the same time. Ex. 5. McAfee and FireEye were combined to form Trellix in 2022. *Id.*

Dr. Cole did not receive confidential information relating to the products accused of infringement in this case and was not involved in product design during his brief time at McAfee over twelve years ago. Ex. 6, Cole Decl., ¶ 10. Dr. Cole's role at McAfee was as a "public face" of the company, which was already in talks to be acquired. *Id.* ¶ 6. His duties were centered around giving keynotes and other presentations to customers regarding cyber threats and risks

being discovered by the malware team. *Id.* ¶ 7. For example, when the Conficker computer worm infected millions of machines in 2009, Dr. Cole was the public figure in charge of communicating about the threat and instructing customers about the best course of action. *Id.* ¶ 8. The product development team did not report to Dr. Cole, and he was not involved in any of the actual development of the products. *Id.* ¶ 9. In his duties communicating with customers, part of his role was to take feedback from the customers regarding certain features that were available in competitors' products and communicate that to McAfee. *Id.* He passed this information to McAfee but was not involved in the development of these features into products, nor was he involved in the decision-making process regarding whether or not the customers' preferences would actually be incorporated into products. *Id.*

Dr. Cole did not have access to development plans or any confidential information regarding the products accused of infringement in this case, nor did he develop, work on, or have access to any of McAfee's source code. *Id.* ¶¶ 10, 24. Dr. Cole is not a named inventor on any patent or patent application filed by McAfee. *Id.* ¶ 12. Dr. Cole has not been involved with McAfee in any respect since his employment ended. He maintains no stock, no board position, and has had no involvement or interaction with McAfee in over 12 years. *Id.* ¶ 13. Trellix presents zero documents and zero witnesses in support of its efforts to disqualify Dr. Cole, instead relying on cherry-picked public statements, which in several instances were not even made by Dr. Cole.

### III. LEGAL STANDARDS

The Court has the inherent power to disqualify an expert. *Koch Refin. Co. v. Jennifer L. Boudreaux MV*, 85 F.3d 1178, 1181 (5th Cir.1996). In *Koch*, the Fifth Circuit adopted the two-step analysis used by lower courts in disqualification cases: (1) whether the opposing party had a confidential relationship with the expert; and (2) whether the opposing party disclosed confidential or privileged information relevant to the instant case to the expert. *Id.* (citation omitted). The

4

party seeking disqualification bears the burden of proving these elements, and only if both prongs are met should the witness be disqualified. *Id.* A number of courts also consider the public interest in deciding whether or not to allow a given expert to testify. *Id.*

"Federal Rule of Civil Procedure 26(c) allows courts, for good cause, to enter a protective order to limit production of, in addition to who can view, trade secrets or other confidential research, development, or commercial information." *ReedHycalog UK, Ltd. v. Baker Hughes Oilfield Operations., Inc.*, 251 F.R.D. 238, 246 (E.D. Tex. 2008); *see also* Fed. R. Civ. P. 26(c)(1)(G) ("The court may, for good cause, issue an order to protect a party or person . . . [by] requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."). To show good cause, the producing party must not only establish that the information is confidential, but also "demonstrate that its disclosure would cause an identifiable, significant harm." *Stone Connection, Inc. v. Simpson*, No. 4:07-cv-431, 2008 WL 1927033, at *1 (E.D. Tex. Apr. 28, 2008); *see also* 8 C. Wright & A. Miller, Federal Practice & Procedure § 2043 (2010) ("Besides showing that the information qualifies for protection, the moving party must also show good cause for restricting dissemination on the ground that it would be harmed by its disclosure.").

## IV.     ARGUMENT

Trellix did not object to Dr. Cole within the time period required by the Protective Order, and its Motion should be denied on that issue alone. Dr. Cole did not have and does not have a relationship with tTrellix, which did not exist in 2009-2011 when Dr. Cole was working with McAfee. Trellix is not able to come forward with *any* evidence to meet its burden to show that Dr. Cole was subject to a confidentiality agreement and that he received confidential or privileged information relevant to this case. In addition to being procedurally improper, Trellix's Motion should also be denied on the merits because it cannot meet its burden.

5

### A. Trellix's Objection to Dr. Cole is Untimely

Trellix did not object to Dr. Cole or communicate any way with counsel for Taasera until April 26, 2023 — 27 days after Dr. Cole was disclosed on March 30, 2023. Exs. 1, 2. The Protective Order in this case provides that before access is given to an outside expert, such expert must be disclosed "at least ten (10) days before access to the Protected Material is to be given . . . to object to and notify the receiving Party in writing that it objects to the disclosure of Protected Material. . . ." Dkt. 162, ¶ 5(e). The Protective Order also provides that "the objecting Party may file a motion with the Court within fifteen (15) days of the notice, or within such other time as the Parties may agree, seeking a protective order with respect to the proposed disclosure." *Id.* Because Trellix did not object to Dr. Cole within the required 10 days of the notice, and did not move within the required 15 days, Trellix's motion should be denied as having been waived.

Trellix makes two attempts to explain away its blatant procedural error. First, it styles the instant motion as a Motion to disqualify rather than a motion for a protective order in an attempt to create distance from the requirements of the Protective Order in this case. Second, it argues that because several other defendants in the consolidated MDL proceeding objected to Dr. Cole and/or requested additional information to evaluate his disclosures, that Dr. Cole was not "fully disclosed" until much later. *See* Mot. at 5 (falsely stating that "Taasera's intention to use Dr. Cole as an infringement expert was first disclosed" on April 27). Both of these arguments fail. Unlike other defendants, Trellix did not request or require any additional information in order to evaluate his experience—the *curriculum vitae* its counsel received on March 30 disclosed his time at McAfee from 2009-2010. Dkt. 219-1. Trellix had the information it needed to lodge an objection to Dr. Cole on that date and it elected not to do so. Trellix also makes much of the additional requests made by other defendants regarding Dr. Cole's background, including arguing that because several other defendants objected to Dr. Cole in a timely fashion, that those objections should also count

6

on behalf of Trellix who elected to remain silent. Mot. at 10-13. But Trellix's improper course of conduct only highlights its lack of diligence to this matter. Allowing timely objections and requests from other defendants to apply to all defendants creates the absurd result of allowing defendants to "daisy chain" objections to prolong what is intended by the Protective Order to be a two-week process. This delay is especially relevant in this action due to the extremely short fact discovery period. Claim construction is proceeding, expert reports are due in September, and Trellix has successfully used this motion to create doubt over whether Dr. Cole will be Taasera's expert in this matter.

### B.   Trellix Did Not Have a Relationship with Dr. Cole

Should the Court consider the merits of the untimely objection, Trellix will fare no better. The first prong of the Fifth Circuit *Koch* test is whether the opposing party had "a confidential relationship" with the expert. *Koch*, 85 F.3d at 1181. Dr. Cole never had a relationship with Trellix, nor does Trellix argue as such. The objection here is based on Dr. Cole's relationship, *fourteen years ago*, with McAfee.[2]

Although not explained in Trellix's Motion, Trellix and McAfee are not related entities. Trellix describes the relationship in one sentence of the introduction as a "predecessor," (Mot. at 1) but the corporate situation appears to be more complex. McAfee Corporation, which still exists, was founded in 1987 as McAfee Associates. Ex. 3. In 2010, Intel purchased McAfee. *Id.* Intel re-branded McAfee as Intel Security in 2011. *Id.* In 2017, Intel spun its Intel Security unit off into a new company, re-named McAfee LLC. Ex. 4. McAfee Enterprise was sold in 2021 to a

---

[2] Trellix, in arguing that e-mail discovery was not appropriate for this case, stated that "Trellix was only recently founded in 2022, and there is no basis to believe Trellix's internal emails would involve anything regarding Taasera or any competition." Ex. 7, March 8, 2023 E-mail from Dietrich to Shea. Now, Trellix appears to claim that it and McAfee are one and the same, despite no allegations regarding alter ego or single business enterprise. Trellix cannot claim that McAfee is relevant and irrelevant to the case depending on which suits the particular situation.

7

private equity firm, which also purchased another cybersecurity company named FireEye at the same time. Ex. 5. McAfee and FireEye were combined to form Trellix. *Id.* Trellix attempts to cast itself as merely a re-named McAfee, but this again appears to be far from the truth.

Trellix claims that, because Dr. Cole worked at McAfee for two years over a decade ago, this contact should be imputed to Trellix, a new entity. But Dr. Cole's work at McAfee should not be imputed to work at Trellix. *Intertrust Techs. Corp. v. Cinemark Holdings, Inc.*, No. 2:19-CV-00266-JRG, 2020 WL 2306600, at *5 (E.D. Tex. May 8, 2020) ("it is undisputed that the Defendants did not share a confidential relationship [with the proposed expert]"). Trellix does not argue that it had a relationship with Dr. Cole, nor can it. Trellix conjures a theory that Dr. Cole's employment at McAfee is relevant because unspecified "versions" of some of the products accused of infringement in this case were available in 2010 when Dr. Cole was employed by McAfee. Mot. at 8. Trellix cites to one case in which a court disqualified an expert based on a relationship with a predecessor entity. In *WesternGeco LLC v. Ion Geophysical Corp.*, No. 09-cv-1827, 2010 WL 2266610, at *1-*3 (S.D. Tex. June 2, 2010), the court excluded a proposed expert who served as an employee of the plaintiff's predecessor for two decades. The proposed expert directly participated in technology development for products that were the "heart of th[e] dispute" in that case and worked in the same group as a named inventor on one of the asserted patents. *Id.* at *1. Here, the proposed expert's time at the predecessor company was brief, not two decades. And here, the proposed expert had no involvement in product design, did not work on products that are the "heart of the dispute," and did not work with any witnesses.

8

If Trellix was truly concerned about Dr. Cole and not merely litigation posturing, it would have located and produced a signed confidentiality agreement between Dr. Cole and McAfee.[3] But instead it resorts to public records showing the employment agreements between McAfee and other employees (Mot. at 2 n.3), McAfee's "default Change of Control and Retention Agreement (*id.* at 2), McAfee's general Code of Business Conduct and Ethics (*id.*), and McAfee's *current* Code of Conduct with confidentiality provisions (*id.* at 3.). None of this "evidence" shows that Dr. Cole had a relationship with Trellix, or received confidential information relevant to this case.

### C. Trellix Has Failed to Prove that Dr. Cole Received Confidential or Privileged Information Relevant to This Case

The second prong of the *Koch* test is whether the opposing party disclosed "confidential or privileged information" relevant to the instant case to the expert. *Koch*, 85 F.3d at 1181. Trellix has not met its burden to show that Dr. Cole received any confidential or privileged information relevant to this case. Dr. Cole had no relationship with Trellix, and Trellix presents no evidence that Dr. Cole received any confidential or privileged information relevant to this case except by arguing that "earlier versions" of some of the Accused Products in this case were available from McAfee in 2010 when Dr. Cole was there. Mot. at 3. But Trellix does not present any argument that these are the same products accused of infringement, nor can it.

Dr. Cole had no involvement in product development or design during his brief period at McAfee. Ex. 6, ¶ 9. Even assuming that Trellix is correct that earlier versions of the Accused Products were "available" when Dr. Cole was at McAfee, then it necessarily means that those products were already designed and developed before Dr. Cole arrived for his brief tenure at McAfee. Already-designed products which appear to have been marketed at the time Dr. Cole

---

[3] Dr. Cole cannot recall whether he was subject to a confidentiality agreement and has not been able to locate one in his files. Cole Decl., ¶ 11. Given the amount of time that has passed since his employment ended, this is unsurprising. *Id.*

9

was at McAfee in a role completely different from product design means that Dr. Cole could not have had involvement in the design of those products.[4]

Trellix also cites to several public statements made by Dr. Cole and others during and subsequent to his tenure at McAfee that it alleges show that "Dr. Cole unquestionably received confidential information relating to the technology at issue in this case." Mot. at 8.

First, Trellix cites to a statement in Dr. Cole's CV stating that while at McAfee he was "[r]esponsible for influencing the company's strategic and technical direction, development, and growth as the global leader in digital security solutions. Worked closely with CEO, EVP of Product Operations, and other stakeholders to establish a product vision and road map to achieve McAfee's goals." *Id.* at 2. Dr. Cole influenced the company's overall strategic and technical direction, development, and growth in digital security solutions, including by presenting feedback from customers to McAfee regarding features in other products. Cole Decl., ¶ 16. As stated in his CV, Dr. Cole worked closely with the CEO, the EVP of Product Operations, and other stakeholders to establish a product vision and road map to achieve McAfee's goal, which at the time was to be acquired by Intel. *Id.*, ¶ 17. When he stated that he "establish[ed] a product vision," he was referring to the general growth strategies for getting McAfee in front of more customers and helping to be an evangelist for the company, not developing products. *Id.*

Second, Trellix cites to a keynote speaker profile which states that "Dr. Cole was engaged in identifying and capturing intellectual property and driving new innovation across the company."

---

[4] Trellix is being intentionally vague regarding the "earlier versions" of the Accused Products that it alleges were available in 2010. In the cybersecurity industry, products are routinely redesigned and significantly updated/upgraded as new types of threats emerge. It is incomprehensible that, aside from sharing names for marketing purposes, the products available in 2010 are being sold in 2022 and accused of infringement in this case. Trellix makes no argument, nor can it, that the current products are representative of prior versions for the purposes of infringement.

10

Dkt. 219-2.  This statement was not written by Dr. Cole and is not correct.[5]  Dr. Cole did not participate in invention disclosure meetings or other meetings regarding intellectual property during his time at McAfee, nor did he communicate with patent attorneys or patent agents.  Cole Decl., ¶ 20.  Dr. Cole was not a named inventor on any patents or patent applications during his time at McAfee.  *Id.* ¶ 12.

Third, Trellix cites to a 2010 profile from ExecutiveBiz.com which states that he was involved in "oversee[ing] key technologists and evangelists in product development and the field, ensuring alignment, creative thought leadership, prototyping of new products/ technology/research and longer range strategic vision."  Dkt. 219-3.  This profile was not authored by Dr. Cole, and the byline states that it was authored by Neel Mehta.  While Dr. Cole did partially oversee key technologists and evangelists who consulted on McAfee solutions, it was not in their capacity as product designers.  Dr. Cole did not develop, work on, or have access to any of McAfee's source code. Cole Decl., ¶ 24.  Dr. Cole unequivocally did not prototype new products or technology at McAfee.  *Id.* ¶ 25.[6]

Fourth, Trellix cites to a public speaking engagement where Dr. Cole allegedly stated that he was recruited to "redesign [McAfee's] entire product line."  He does not recall making this statement and cannot confirm whether the transcription is accurate.  *Id.* ¶ 26.  However, in receiving feedback from customers and providing a list of features that were desired by customers and that would make the products more competitive, that was provided to executives in McAfee and used as one of the data points for deciding what new features to put into products and at a high

---

[5] Even if it were correct, "capturing intellectual property" is separate and distinct from product design.  Cole Decl. ¶ 19.
[6] Trellix also cites to two YouTube videos in which Dr. Cole stated that he joined McAfee to "reposition their technology" and was "brought in to 'revamp the company.'"  Mot. at 2.  These statements were made with respect to Dr. Cole's external-facing evangelist role.  Cole Decl., ¶ 28.

11

level would impact the product line. *Id.* This remark, even if accurate, does not imply that Dr. Cole was overseeing product design directly.

Defendant relies on *Lake Cherokee Hard Drive Techs., LLC v. Bass Computs., Inc.*, to support its position. No. 2:10-cv-216-JRG, 2012 WL 708354, at *2-*3 (E.D. Tex. Mar. 5, 2012). In that case, the expert had been directly employed by the moving defendant, unlike here where he had no direct involvement with Trellix and no direct involvement with the Accused Products. In *Lake Cherokee*, the moving defendant submitted a declaration from an employee with personal knowledge about the expert's access to confidential information. *Id.* Here, Trellix has done no such thing. Dr. Cole did not work for Trellix, and the "earlier versions" of the Accused Products in this case that were being marketed in 2010 must have already been designed prior to his arrival. Here, there is a "tenuous and indirect" relationship between the defendant and Dr. Cole, and there is a "clear absence of evidence" regarding whether specific confidential information was actually disclosed to Dr. Cole. *Intertrust*, 2020 WL 2306600, at *6 (refusing to disqualify expert because defendant had failed to come forward with a confidentiality agreement or actual evidence that relevant confidential information was disclosed); *Return Mail, Inc. v. United States*, 107 Fed. Cl. 459, 467-68 (Fed. Cl. 2012) (declining to exclude expert because defendant did not come forward with specifics of expert's tenure of employment where expert "affirmatively denie[d] any knowledge of relevant confidential information concerning the USPS technology alleged as infringing"). Trellix's request for *voir dire* of Dr. Cole and repeated requests to Taasera for more information regarding his tenure at McAfee (*see* Mot. at 7, and 2 n.2) only underscores that Trellix improperly made this Motion without sufficient evidence, and therefore cannot meet its burden to show that Dr. Cole should be disqualified.

### D.  Public Policy Does Not Support Disqualification

No public policy supports disqualifying Dr. Cole in this case because his work with McAfee does not give rise to any conflict in this case. *Intertrust*, 2020 WL 2306600, at *6. Disqualifying him under these circumstances would broaden the scope of expert disqualification significantly. This case also presents a unique policy situation, in which the Court's Protective Order provides specific timelines for objecting to experts to prevent a party from doing precisely what has been done here—allowing a cloud to hang over a party's testifying expert for half of the fact discovery period. Blessing Trellix's belated procedural objections would eviscerate the Protective Order's requirement that objections to experts be presented within 10 days, and motions for protective order be made within 15 days of the disclosure.

### E.  There is No Good Cause for a Protective Order

Although styled as a motion for partial disqualification in an attempt to distance itself from the missed deadlines in the Protective Order, Trellix's Motion is a motion for Protective Order to prevent Dr. Cole from viewing its confidential information. To prevail on a motion for protective order, Trellix must show good cause, and must not only establish that the information is confidential, but also "demonstrate that its disclosure would cause an identifiable, significant harm." *Stone Connection,* 2008 WL 1927033, at *1. Trellix cannot show good cause and cannot demonstrate that disclosure of Trellix's confidential information to Dr. Cole would cause it harm in any way. Trellix's argument that because Dr. Cole previously received confidential information, he must be prevented from potentially viewing the same confidential information in this case cannot rise to the level of "good cause," nor has Trellix argued that it would be harmed in any way by the re-disclosure of its information.

## V. CONCLUSION

For the foregoing reasons, Taasera requests that the Court deny Trellix's Motion to Partially Disqualify Dr. Eric Cole (Dkt. 219) in its entirety.

| | |
|---|---|
| Dated: May 17, 2023 | Respectfully submitted, |

                                                                                 */s/ Alfred R. Fabricant*
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@fabricantllp.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@fabricantllp.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@fabricantllp.com
Joseph M. Mercadante
NY Bar No. 4784930
Email: jmercadante@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue,
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

Samuel F. Baxter
Texas State Bar No. 01938000
Email: sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
Email: jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Justin Kurt Truelove
Texas Bar No. 24013653
Email: kurt@truelovelawfirm.com
**TRUELOVE LAW FIRM, PLLC**
100 West Houston Street
Marshall, Texas 75670
Telephone: (903) 938-8321

Facsimile: (903) 215-8510

***ATTORNEYS FOR PLAINTIFF***
***TAASERA LICENSING LLC***



**CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2023, a true and correct copy of the above and foregoing document has been served by email on all counsel of record.

/s/ Alfred R. Fabricant
Alfred R. Fabricant