# Exhibit 6

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In re application of: **Jatin MALIK et al.**

Title: **RULES BASED ACTIONS FOR MOBILE DEVICE MANAGEMENT**

Application No.: **13/540,142**

Group Art Unit: **2441**

Filed: **July 2, 2012**

Examiner: **Kostas J. Katsikis**

Confirmation: **4198**

Filed by EFS on: **May 19, 2014**

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

**AMENDMENT AND REQUEST FOR RECONSIDERATION UNDER 35 U.S.C. § 1.111**

Sir:

In response to the Office Action mailed on December 19, 2013, Applicants respectfully request reconsideration in light of the:

**Listing of the Claims**, reflecting current amendments, beginning on page 2; and

**Remarks** beginning on page 6 of this paper.

**Listing of Claims:**

This listing of claims will replace all prior versions and listings of claims in the application.

1. (Presently Amended) A method for providing device management services comprising steps of:

gathering, from a network, status information related to each of a plurality of mobile devices, each mobile device utilizing one of a plurality of different mobile operating systems;

storing the status information in an electronic database accessible to a server;

evaluating at the server a first compliance state of at least one of the mobile devices from the status information using a plurality of administrator-defined rules; and

initiating at least one action defined by the [[user]] administrator-defined rules in response to the step of evaluating,

wherein the step of ~~evaluation~~ evaluating is performed by [[a]] the server automatically, in response to changes in the status information in the electronic database .

2. (Original) The method of claim 1, wherein the at least one action is selectable from a plurality of actions, comprising blocking access by the at least one of the mobile devices to a corporate resource.

3. (Original) The method of claim 1, wherein the at least one action is selectable from a plurality of actions, comprising blocking e-mail access for the at least one of the mobile devices.

4. (Original) The method of claim 1, wherein the at least one action is selectable from a plurality of actions, comprising wiping information from the at least one of the mobile devices.

5. (Original) The method of claim 1, wherein the at least one action is selectable from a plurality of actions, comprising warning a user of the at least one of the mobile devices that further action may be taken.

6. (Original) The method of claim 1, wherein the step of gathering status information, for the at least one mobile device, comprises gathering information from that mobile device and at least one other source on the network.

7. (Original) The method of claim 1, further comprising the step of subsequently evaluating a second compliance state of at least one of the mobile devices to determine if the at least one action should be revoked.

8. (Currently Amended) The method of claim 1, wherein the plurality of different mobile operating systems comprise at least operating systems compliant with Android and iOS specifications.

9. (Original) The method of claim 1, wherein the status information comprises location information about each mobile device.

10. (Currently Amended) A method for providing device management services comprising steps of:

making a determination that an attribute of a mobile device has changed;

evaluating the attribute, by a processor at a server in response to the determination, to determine if it triggers at least one of a plurality of administrator defined rules, which indicates that the attribute is out of compliance; and

automatically initiating, at the server, an action defined by the at least one of a plurality of administrator defined rules if the attribute is out of compliance,

wherein the attribute is stored in a data store accessible to the server, that includes substantially real-time data, gathered from a network, pertaining to a plurality of attributes of a plurality of mobile devices, comprising devices having different mobile operating systems.

11. (Original) The method of claim 10, wherein the step of automatically initiating an action comprises warning a user of the mobile device that the device is out of compliance and subsequently causing the action to be performed if the attribute remains out of compliance after a period of time defined in the at least one rule.

12. (Original) The method of claim 10, further comprising the step of automatically revoking the action if the attribute is brought back into compliance.

13. (Original) The method of claim 12, wherein the step of automatically revoking the action comprises determining if another of the plurality of rules is triggered.

14. (Original) The method of claim 10, further comprising the step of gathering the plurality of attributes for at least one of the plurality of mobile device by gathering attribute information from that mobile device and at least one other source on a network.

15. (Currently Amended) The method of claim 10, wherein the plurality of different mobile operating systems comprise at least operating systems compliant with Android and iOS specifications.

16. (Original) The method of claim 10, wherein the attribute comprises location information about the mobile device.

17. (Currently Amended) A system for providing device management services comprising:

a data store configured to be accessible by a server;

a CPU of the server coupled to a memory configured to execute computer readable instructions;

computer readable instructions for execution on the server comprising instructions configured to:

automatically make a determination that an attribute of a mobile device stored in the data store has changed;

evaluate the attribute, in response to the determination, to determine if it triggers at least one of a plurality of administrator defined rules, which indicates that the attribute is out of compliance; and

automatically initiate an action defined by the at least one of a plurality of administrator defined rules if the attribute is out of compliance,

wherein the data store is configured to ~~include~~ gather, from a network, substantially real-time data pertaining to a plurality of attributes of a plurality of mobile devices, comprising devices having different mobile operating systems.

18. (Original) The system of claim 17, wherein the computer readable instructions further comprise instructions configured to present a user interface to an administrator to allow selection of at least one attribute and one available action to define the at least one of the plurality of administrator defined rules.

19. (Original) The system of claim 18, wherein at least one of the actions comprises warning a user of the mobile device that the device is out of compliance and causing subsequent action to be performed if the attribute remains out of compliance after a period of time defined in the at least one rule.

20. (Original) The system of claim 17, wherein the computer readable instructions further comprise instructions configured to automatically revoke the action if the attribute is brought back into compliance.

21. (Original) The system of claim 17, wherein the computer readable instructions further comprise instructions configured to gather the plurality of attributes for at least one of the plurality of mobile device by gathering attribute information from that mobile device and at least one other source on a network.

22. (Currently Amended) The system of claim 17, wherein the plurality of different mobile operating systems comprise at least operating systems compliant with Android and iOS specifications.

23. (Original) The system of claim 17, wherein the attribute comprises location information about the mobile device.

## REMARKS

Claims 1-23 were pending in the application. Claims 1, 8, 10, 15, 17, and 22 have been amended. Support for these amendments can be found throughout the application, including but not limited to paragraphs 25-27 and Figs 1-4 and related disclosure. No new matter has been introduced. Accordingly, upon entry of this amendment, claims 1-23 are before the Examiner.

### Claim Objections

Claims 8, 15, and 22 are objected to because the trademark ANDROID™ is not permissible in claim language. Applicants respectfully submit that the use of Android is descriptive of the type of devices and operating system used on these devices. Accordingly, it does not render the claim indefinite, because a person of ordinary skill in the art would understand the claim limitation to identify a typo of mobile device operating system. *See, e.g.,* MPEP 608.1(v) ("Names used in trade are permissible in patent applications if: (B) In this country, their meanings are well-known and satisfactorily defined in the literature."); MPEP 2173.05(u) ("The presence of a trademark or trade name in a claim is not, per se, improper under 35 U.S.C. 112, second paragraph,").

Furthermore, claims 8, 15, and 22 have been amended to make clear that they are not referring to a source of goods or a particular material or product, but rather operating systems compliant with popular mobile OS specifications. Accordingly, Applicants respectfully request withdrawal of this objection.

### Rejections Under 35 U.S.C. § 101

Claims 17-23 stand rejected under 35 U.S.C. § 101 as allegedly being directed to non-statutory subject matter. Applicants would like to thank the Examiner for his suggested change. This change has been adopted. Accordingly, Applicants respectfully request withdrawal of this rejection.

### Rejections Under 35 U.S.C. § 102

Claims 1-2, 6, 9-10, 14, 16-18, 21, and 23 stand rejected under 35 U.S.C. § 102(b) as allegedly being anticipated by Thomas et al. (U.S. Patent Publication No. 2010/0242088).

Independent claims, 1, 10, and 17 have been amended. Thomas fails to teach all elements of these claims, at least because it fails to teach "storing the status information in an electronic database accessible to a server" and that a "step of evaluating is performed by the server automatically, in response to changes in the status information in the electronic database." [Claim 1, exemplary] By responding automatically at the server to changes in status information in a database, the claimed invention is fundamentally different from the system taught be Thomas, and certain benefits may exist, as would be apparent to a person of ordinary skill (e.g., scalability, centralized evaluation and enforcement of policies).

Thomas teaches a system that provides for centralized policy updates to client facilities, to allow these client facilities to implement and/or participate in the application of the policies. For example, the system of Thomas utilizes a centralized threat management facility 100 "to facilitate the setting, updating and control of such policies the corporation only needs to be concerned with keeping the threat management facility 100 up to date on such policies. The threat management facility 100 can take care of updating all of the other corporate computing assets." Thomas [23]. "[T]he threat management facility 100 may create definition updates," "the client facility 144 may be updated with new definition files periodically to provide the client facility 144 with the most recent malicious code definitions." Thomas at [40].

While Thomas teaches policy management that is handled by a server (e.g., the threat management facility), the enforcement of rules is taught as done on the clients or done in a distributed manner with the assistance of the client. For example, the central management facility can directly access the state information of the client facility, such as by scanning files on the client. "The security management facility 122 [part of facility 100] may have the ability to scan the client facility 144 files for malicious code, remove or quarantine certain applications and files, prevent certain actions, perform remedial actions and perform other security measures. In embodiments, scanning the client facility 144 may include scanning some or all of the files stored to the client facility 144 on a periodic basis, may scan applications once the application has been requested to execute, may scan files as the files are transmitted to or from the client facility 144, or the like. The scanning of the applications and files may be to detect known malicious code or known unwanted applications." Thomas at [28]. Thomas also teaches other enforcement actions that a person of ordinary skill in the art

would understand as being performed at the client facility, such as URI filtering and monitoring [29], monitoring behavior before allowing execution of software [30], monitoring outgoing files [42], etc.

A person of ordinary skill in the art would understand Thomas a teaching a scheme whereby a server updates policy information, but enforcement is generally performed locally on the clients (e.g. scanning for local malware, monitoring outgoing network communication, etc.) – not evaluating, by a server, a compliance state of mobile devices in response to changes in status information that is stored in a database accessible to the server. For example, Thomas teaches that an end-point computer security facility is an application that is adapted to the OS of the endpoint device and loaded thereon. Thomas at [50]. Because Thomas teaches updated policy information distributed to client facilities, local software that allows scanning of data on client devices, and the ability for clients to monitor activity and apply policies at the client devices, there is simply no need for Thomas to utilize a database that contains information about the status of mobile devices. Such a database is not taught nor would such a modification be obvious, because it would likely frustrate scheme already taught by Thomas.

Applicants respectfully contend that the paragraphs cited by the Examiner do not teach a server-accessible database that stores status information about mobile devices. For example, Paragraphs 44-47 discuss a database of rules (e.g. network access rule 124). Paragraphs 84-85 discuss generic databases, clients, and servers. Thomas does not teach that status information about mobile devices is gathered and stored in that database or that the server evaluates rules based on changes to this status information. Rather, Thomas teaches that a database of rules can help facilitate the central management of rules that can be enforced at client facilities, as discussed above. Because Thomas fails to teach a database of mobile device status information, it further fails to teach evaluating, by the server, a compliance state based on administrator defined rules, in response to changes in that mobile device status information in the database.

For at least these reasons, Thomas fails to teach all the elements of independent claims 1, 10, and 17. Applicants also believe that any further discussion of the patentability of the additional elements in the independent claims in light of infirmities of the prior art is not needed as moot.

Applicants further submit that, because claims 2, 6, 7, 9, 14, 16, 18, 21, and 23 depend from and incorporate all of the limitations of the respective independent claims, these dependent claims are non-obvious over the cited references for at least the reasons stated above with respect to the independent claims. Applicants also believe that any further discussion of the patentability of the additional elements in the dependent claims in light of infirmities of the prior art is not needed as moot. However, Applicants reserve the right to discuss these individual elements further if the Examiner disagrees with Applicants current arguments with respect to the independent claims.

Accordingly, Applicants respectfully request that the rejections associated with claims 1-2, 6, 9-10, 14, 16-18, 21, and 23 be withdrawn and allowance of these claims be swiftly granted.

**<u>Rejections Under 35 U.S.C. § 103</u>**

Claim 3 stands rejected under 35 U.S.C. § 103(a) as allegedly being obvious over Thomas in view of Moghaddam et al. (U.S. Patent Publication No. 2008/0114862).

Claims 4, 8, 15, and 22 stand rejected under 35 U.S.C. § 103(a) as allegedly being obvious over Thomas in view of Naiman et al. (International Patent Publication No. WO 2011/022053).

Claims 5, 11, and 19 stand rejected under 35 U.S.C. § 103(a) as allegedly being obvious over Thomas in view of Yaqub et al. (U.S. Patent Publication No. 2007/0206552).

Claims 7, 12, 13, and 20 stand rejected under 35 U.S.C. § 103(a) as allegedly being obvious over Thomas in view of Germano et al. (U.S. Patent Publication No. 2007/0266422).

Applicants further submit that, because each of these claim depend from and incorporate all of the limitations of the respective independent claims, these dependent claims are non-obvious over the cited references for at least the reasons stated above with respect to the independent claims. See MPEP §2143.03 (stating that if an independent claim is nonobvious under 35 U.S.C. §103, then any claim depending therefrom is nonobvious). Applicants also believe that any further discussion of the patentability of the additional elements in the dependent claims in light of infirmities of the prior art is not needed as moot. However, Applicants reserve the right to discuss these individual elements further if the Examiner disagrees with Applicants current arguments with respect to the independent claim.

Accordingly, Applicants respectfully request that the rejections associated with these remaining claims be withdrawn and allowance of these claims be swiftly granted.

## CONCLUSION

Early reconsideration and allowance of all pending claims is respectfully requested. The Examiner is requested to contact the undersigned attorney if an interview, telephonic or personal, would facilitate allowance of the claims.

## AUTHORIZATION

The Commissioner is hereby authorized to charge any additional fees which may be required for this response, or credit any overpayment, to deposit account no. 50-0436.

Respectfully Submitted

By: /Jay R. Mitchell, Reg. No. 54316/
Jay R. Mitchell
Registration No. 54,316

Dated: **May 19, 2014**
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Street
Philadelphia, PA 19103-279
Telephone: (215) 981-4664
Facsimile: (610) 640-7835